452 So.2d 520 (1984)
Omar BLANCO, Appellant,
v.
STATE of Florida, Appellee.
Nos. 62371, 62598.
Supreme Court of Florida.
June 7, 1984.
Rehearing Denied July 26, 1984.
*522 Michael D. Gelety, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen. and Marlyn J. Altman, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
The appellant, Omar Blanco, appeals his convictions for first-degree murder and armed burglary and the imposition of the death sentence and a separate sentence for burglary. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Fourteen-year-old Thalia Vezos testified that at approximately 11 p.m. on January 14, 1982, she was in her bed reading at her home in Ft. Lauderdale when she saw a man standing in the hallway holding a gun and carrying a brown wallet-type object under his arm. The intruder indicated that Thalia was to keep quiet. He then cut the wires to her telephone and left the room. Thalia's uncle, John Ryan, appeared in the hall and tried to take the gun from the intruder. Ryan was shot in the scuffle and landed on top of his niece on the bed. The intruder shot Ryan six more times. The intruder then fled. Thalia ran next door to the home of the Wengatzes, where the police were called.
The police arrived at the crime scene at 11:14 p.m. Officer Bull went next door and spoke to Thalia, who described the intruder as a Latin male, between 5'8" to 5'10", 180 to 190 pounds, wearing a gray or light green jogging suit, with dark curly hair. Officer Bull sent the description to a dispatcher at approximately 11:24 p.m. A man who lived across the street, George Abdeni, came forward with a report that he had heard shots and screaming and had seen the profile of a person in a gray jogging suit heading east from the Vezos property. This information was contained in a police BOLO that included the fact that the suspect was proceeding eastward.
The BOLO as dispatched described the suspect as a Latin male about 5'10" in height with a dark complexion, black curly hair, some kind of mustache, wearing a gray or light green jogging suit, and running in an eastwardly direction. Officer Price, who was in the area, positioned his car approximately one and a half miles from the scene in a driving lane facing east on 30th Street next to North A1A to watch for someone fitting the BOLO description. At approximately 11:57 p.m. he saw appellant riding a white bicycle on the sidewalk *523 southbound on A1A and determined that appellant fit the description on the BOLO except for his pants, which at first appeared to be heavy corduroy. He also had full facial hair. Officer Price requested more information. He then followed appellant for approximately one-tenth of a mile before stopping him. The first thing the officer noticed when he got within three to four yards of appellant was that the gray pants were the same material as the top of the sweatsuit. Officer Price requested a backup unit. He asked appellant if he possessed a gun. Appellant replied, "No Ingles." The officer frisked appellant, but found nothing but a necklace and watch which appellant was wearing. When the backup unit arrived, the officers handcuffed appellant and took him to the murder scene. Mr. Adbeni identified appellant as having the same profile and jogging suit as the figure he had seen earlier. Appellant was then formally arrested.
A man's purse containing appellant's ID papers and a watch belonging to Thalia Vezos was found near the door to Thalia's bedroom.
On the day following the murder, Thalia Vezos identified appellant in a line-up as the perpetrator. The Broward County Grand Jury indicted appellant on February 2, 1982, for first-degree premeditated murder and for armed burglary. Trial began on June 1, 1982, and the jury found appellant guilty on both counts. In compliance with the jury's recommended verdict, the trial judge sentenced appellant to death for the murder. He was sentenced to 75 years for the armed burglary.
Appellant first argues that the trial court erred in failing to suppress evidence derived from appellant's arrest in that the information Officer Price received over the BOLO did not furnish sufficient grounds to justify the initial investigative stop. Appellant further argues that, regardless of the legality of the initial stop, the de facto arrest was illegal because there was no probable cause to believe appellant had committed the murder. We disagree. The probable cause standard for a law enforcement officer to make a legal arrest is whether the officer has reasonable grounds to believe the person has committed a felony. The standard of conclusiveness and probability is less than that required to support a conviction. Shriner v. State, 386 So.2d 525 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981). We find that the description furnished Officer Price over the BOLO, coupled with the proximity in time and place to the scene of the crime, furnished reasonable grounds for the officer's belief that appellant had committed the murder and rendered the arrest legal. The motion to suppress was properly denied. There were sufficient grounds for the arrest; ergo there were grounds for the stop.
Appellant next contends that the trial court erred in refusing to admit evidence of an armed robbery which had occurred two weeks before the murder in the present case and at a house that is back to back with the house where the murder occurred. The trial judge determined that the defense hypothesis that the evidence of the robbery would tend to show someone other than the accused committed the murder was speculative and irrelevant. We agree and find no abuse of discretion. Appellant's theory is far-fetched and unsupported. Thalia did not recognize the photographs of any of the robbers and she positively identified appellant as the murderer of her uncle. Appellant has failed to present any reasonable theory upon which the admission of evidence of the robbery would have tended to exculpate him. A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion. Booker v. State, 397 So.2d 910 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981). The test of admissibility is relevancy. Johnson v. State, 130 So.2d 599 (Fla. 1961). To be admissible, evidence must be both logically and legally relevant. Wolf v. State, 72 Fla. 572, 73 So. 740 (1917).
Appellant next argues that the trial court erred in making statements on the record in appellant's absence to explain a *524 ruling it had made on the legality of appellant's arrest. In appellant's presence the trial court had previously received testimony and heard arguments of counsel regarding appellant's motions to suppress evidence based on the alleged illegality of the arrest. We find that under these circumstances the reading of statements into the record by the trial court did not constitute an essential stage of the trial mandating appellant's presence. See Fla.R.Crim.P. 3.180.
Appellant argues that the trial court erred in allowing him to call witnesses against his trial counsel's advice, thereby interfering with the presentation of his defense. Trial counsel explained several times to appellant that he considered it not to be in appellant's best interests to call the witnesses, but appellant insisted. The record reflects, and appellant concedes in his brief, that he was told that the witnesses' testimony would be detrimental to his case. The trial court finally ruled in favor of allowing appellant to present to the jury whatever evidence appellant felt was beneficial. Under these circumstances, the trial court did not err in allowing appellant to present witnesses. The ultimate decision is the defendant's. Milligan v. State, 177 So.2d 75 (Fla. 2d DCA 1965).
Appellant contends that the trial court erred in denying his motion to suppress the identification testimony of George Abdeni and Thalia Vezos. The test for determining the legality of an out-of-court identification is:
(1) did the police employ any unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification.
Grant v. State, 390 So.2d 341, 343 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981). In the case of Abdeni, a show-up identification procedure was used. A show-up is inherently suggestive in that a witness is presented with only one suspect for identification, but the procedure is not invalid if it did not give rise to a substantial likelihood of irreparable misidentification under the totality of the circumstances. State v. Cromartie, 419 So.2d 757 (Fla. 1st DCA), petition dismissed, 422 So.2d 842 (Fla. 1982). Further, we are mindful that "an identification made shortly after the crime is inherently more reliable than a later identification in court." State v. Freber, 366 So.2d 426, 428 (Fla. 1978). We agree with the trial court that no unnecessarily suggestive procedure was employed in this instance. When Abdeni made his identification at the scene, he was identifying only the jogging suit and general profile of the person he had seen. Neither at the hearing on the motion to suppress nor at trial did Abdeni identify appellant as the person he had seen, specifying at both times that he had not seen the alleged assailant's head. We find no error.
Regarding the testimony of Thalia Vezos, appellant argues that the line-up at which she identified appellant as the perpetrator was unnecessarily suggestive in that the other persons in the line-up were physically dissimilar to appellant, creating a substantial likelihood of misidentification. We do not agree with appellant. The record supports the trial court's finding that the line-up was extremely fair and that Thalia identified appellant without any suggestability. Appellant was number one in the line-up on the day following the murder, and the police had to restrain her from making an immediate identification. Thalia had ample opportunity to view the perpetrator at the time of the crime, when, according to her testimony, he was within her view for approximately ten minutes. We find under the totality of the circumstances that the out-of-court identification of appellant by Thalia was admissible, as was her in-court identification based on her ability to observe appellant at the crime scene. See Lecoin v. State, 418 So.2d 336 (Fla. 3d DCA 1982).
Appellant argues that the trial court erred in allowing the jury to hear certain statements he made to the police, which had been ordered suppressed because *525 of Miranda violations. Appellant chose to take the stand, putting his credibility at issue and opening the door for the statements to be used to impeach his testimony. We held in Nowlin v. State, 346 So.2d 1020, 1024 (Fla. 1977), that
whenever the state, in order to impeach a defendant's credibility, chooses to present evidence of a defendant's incriminating statements which are inconsistent with trial testimony of the defendant and which are inadmissible in the case-in-chief because of the failure of custodial officers to give Miranda warnings, the statements must be shown to be voluntary before they may be admitted.
The trial court in the present case found that appellant's statements were freely and voluntarily made and were suppressed only because of the Miranda violation. We affirm the trial court in allowing the statements to be admitted for impeachment purposes.
We find no merit in appellant's argument that the trial court erred in instructing the jury regarding burglary. The trial court read the Florida Standard Jury Instructions (Criminal, Vol. II, 1981). There was circumstantial evidence from which the jury could properly conclude that appellant entered the Vezos home with the intent to commit theft.
Appellant also argues that the jury was erroneously instructed on the unexplained possession of recently stolen property, because appellant had no recently stolen property on his person at the time of his arrest. This point has no merit. Thalia Vezos testified that appellant had a purse under his arm. The purse subsequently was found to contain Thalia's wristwatch. There was therefore evidence which would allow the jury to find that appellant had had recently stolen property in his possession.
Appellant claims the trial court erred in sentencing him separately for the burglary, because the first-degree murder conviction was based on the felony murder theory, there being no premeditation. This argument is meritless. Appellant was indicted for premeditated murder, the jury was instructed on premeditated murder, and the evidence supported premeditated murder. It is not error to convict and sentence a defendant for both premeditated murder and burglary when both have been charged and the state has introduced sufficient evidence of premeditation to support the murder conviction even had the jury not returned the burglary conviction. Breedlove v. State, 413 So.2d 1, 8 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
Appellant also challenges the imposition of the death sentence. The trial court based the sentence upon a finding of four statutory aggravating factors and no mitigating factors. The factors of pecuniary gain and committing a capital felony during the commission of a burglary were considered as but one of the four aggravating factors. The other aggravating factors found by the trial court were that the defendant had previously been convicted of another felony involving the use of violence, that the crime was especially heinous, atrocious, or cruel, and that it was committed in a cold, calculated and premeditated manner.
We find no error in using burglary and pecuniary gain as one factor. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). The factor of the prior conviction was properly considered by the trial court. In the interim between the trial court's sentencing order and oral argument before this Court, the prior conviction was reversed. Blanco v. State, 438 So.2d 404 (Fla. 4th DCA 1983). Recently appellant was reconvicted on March 14, 1984. To remand for resentencing under these circumstances would be pointless in light of the fact that the judge could again consider the conviction as an aggravating factor. We find no reversible error.
We find that the trial court erroneously applied the heinous, atrocious, and cruel factor to the circumstances of this murder. This factor applies only to *526 "those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). This factor was not shown beyond a reasonable doubt in the present case. See e.g., Lewis v. State, 377 So.2d 640 (Fla. 1979) and Kampff v. State, 371 So.2d 1007 (Fla. 1979).
The cold, calculated and premeditated factor was likewise erroneously applied. Although there was evidence of premeditation sufficient to support a finding of premeditated murder, there was no showing of heightened premeditation beyond a reasonable doubt necessary to the proper application of this factor. A reasonable interpretation of the evidence is that appellant entered the dwelling with the intent to steal and was surprised by Ryan's attempt to take the gun from him. The subsequent shots followed quickly and do not show any heightened premeditation, calculation, or planning. See Richardson v. State, 437 So.2d 1091 (Fla. 1983). Compare Hill v. State, 422 So.2d 816 (Fla. 1982), cert. denied, 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983).
The trial court found no mitigating factors. The defense presented no evidence in mitigation, and specifically waived the mitigating circumstance of no significant history of prior criminal activity; the defense may reasonably have thought it would be a fruitless effort to present evidence as to this circumstance, having stipulated to the prior conviction.
The jury recommended imposition of the death sentence. The trial court found two valid aggravating factors. Where there are one or more valid aggravating factors that support a death sentence and no mitigating circumstances to weigh against the aggravating factors, death is presumed to be the appropriate penalty. White v. State, 446 So.2d 1031 (Fla. 1984); Armstrong v. State, 399 So.2d 953 (Fla. 1981); State v. Dixon. Moreover, we have compared this case with all past capital cases and have determined that the imposition of the death sentence in this case is not comparatively disproportionate. We find no error in the trial court's imposition of the death sentence.
The convictions and sentences for first-degree murder and armed burglary are affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.