BARKDULL, Judge.
This is an appeal from an order of revocation of probation and sentence entered after a probation revocation, court case numbers: 88-21096; 88-21274; 88-21275; 88-21276; and 88-21416. Pursuant to the agreed plea of nolo contendere, the trial court placed the defendant on probation for ten (10) years. As special conditions of his probation, the defendant had to serve 364 days in jail until completion of his jail term.
On September 14, 1989, the state filed an affidavit of violation of probation alleging that the defendant violated probation by failing to report upon release and by failing to remain at liberty.[1] The defendant filed a motion to suppress alleging that the police obtained evidence through an illegal search and seizure. The trial court conducted a hearing on the motion to suppress and on the violation of probation.
The state called James Murray, a police officer with the Metro-Dade Police Department, who testified that he was on a burglary stakeout in the area, when he heard a BOLO for a burglary in progress. Officer Murray testified that the BOLO indicated that there was more than one subject and they were on a blue, three-wheeled, bicycle with a large basket in the back. There was at least one white male among the three. They continued their surveillance, and five or six minutes after hearing the BOLO they observed the defendant. Officer Murray further testified that he first observed the defendant riding a three-wheeled, blue, bicycle with a basket in the back and with a piece of property that appeared to be a colored [sic] television set; the large square object was covered with a blanket when they were stopped. Subsequently, Officer Murray testified that it was a very unusual type of bicycle; it has one large front wheel and two large back wheels. The bicycle matched the description on the BOLO; the victim had reported a stolen television set. Officer Murray then testified that upon inspecting the property, it turned out not to be a television set, but rather a microwave, which from the front looked exactly like a television set.[2]
*950 Also during the interview, the defendants told the officers where the television set and the remote control unit were. The television set was never recovered, because it had already been sold; however, the remote control was exactly where the defendant said it would be, and was subsequently recovered from the fence’s house. Officer Murray could not testify how long the defendants were detained. He further stated that an eye witness identified the defendant. According to Murray’s testimony, the eye witness looked at the photographic line-up for approximately two seconds, before making up her mind and selecting the defendant’s photograph.
Following Officer Murray’s testimony, the state rested and the defendant then took the stand on his behalf. The defendant testified that he was living with his brother, about a mile away from the co-defendants’ house. According to the defendant, he was walking from his brother’s house to a friend’s house, when he met one of the co-defendants on a three-wheeled bicycle that had a microwave on the back, that was covered with a blanket. Shortly thereafter, the other co-defendant drove up on a brown bicycle and the defendant asked for a ride down the road.
The defendant testified that he never told Officer Murray that he was involved in the burglary as a lookout, nor did he ever tell a police officer that he knew a television set had been stolen.
The defendant also testified that he was held in the police car for nine (9) hours before he was released, while the police officer could not remember how long he had detained the appellant. The trial court denied the motion to suppress and sentenced the appellant to seventeen (17) years in jail. The written order for revocation of probation states that the appellant failed to report, notwithstanding the trial court’s oral pronouncement that failure to report would not be deemed a violation of probation by the appellant.
The appellant contends: (1) The lower court erred in denying the appellant’s motion to suppress statements, since the statements were the product of an illegal detention, both because it was based on vague and unreliable information and because its length exceeded its underlying justification; (2) The lower court further erred in violating the appellant’s probation, which was based on the above described statements that should have been suppressed, since they lacked any corpus de-licti to justify their admission into evidence. The only remaining evidence being hearsay, there was no evidentiary basis for the revocation of probation; and (3) Finally, the trial court’s oral pronouncements differed in substance from the written revocation order.
The state contends: (1) The stop and detention were a justifiable, investigatory, stop and detention, under the facts of this case, thus the trial court did not err, in denying the motion to suppress. The appellant’s statements were completely voluntary; (2) There is substantial competent evidence to support the trial court’s finding, that the appellant had violated his probation; and (3) The state confesses error as to appellant’s third point.
We affirm the trial court's denial of the motion to suppress on the authority of State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978); Blanco v. State, 452 So.2d 520 (Fla.1984). We also affirm the violation of probation order on the authority of Kirk v. State, 400 So.2d 540 (Fla. 3d DCA 1981); Randolph v. State, 292 So.2d 374 (Fla. 3d DCA 1974), and we vacate the order of revocation and remand with instructions to enter a written order which conforms to the oral pronouncements. See Salmon v. State, 540 So.2d 922 (Fla. 3d DCA 1989); Williams v. State, 525 So.2d 458 (Fla. 2d DCA 1988).
Affirmed in part, reversed in part, and remanded.

. The defendant managed to remain at liberty for eleven (11) days after his release; the defendant was released from jail on a Friday and he was arrested on the current charge on the second Tuesday following his release.

. Officer Murray testified as follows:
THE WITNESS: In the context of talking to him, we interviewed him and advised them of their rights and spoke to them. He admitted to his part in the involvement of the burglary.
THE COURT: Who admitted?
THE WITNESS: The defendant admitted his part in the burglary.
THE COURT: What did he say?
THE WITNESS: He said that he was the lookout for them and that he was on the south side of the building and walked around to the north side. When his co-defendant came out of the house, he insisted in bringing the television set and the remote control over to the bicycle, putting it on the back and subsequently driving over to a fence’s house.
THE COURT: Dennis Fairman told you that?
THE WITNESS: Yes Sir.