QUINCE, J.
Vincent Puglisi seeks review of the decision of the Fourth District Court of Appeal in Puglisi v. State, 56 So.3d 787 (Fla. 4th DCA 2010), on the ground that it expressly and directly conflicts with a decision of the Fifth District Court of Appeal in Cain v. State, 565 So.2d 875 (Fla. 5th DCA 1990), on a question, of law. The Fourth District subsequently certified conflict with the Fifth District’s decision in Cain. See Puglisi, 56 So.3d at 794. We have jurisdiction. See art. V, § 3(b)(3), (4), Fla. Const.
The question before us is whether a criminal defendant has' the ultimate authority to decide whether to present witnesses at trial when the defendant is represented by counsel. We answer this question in the negative and hold that defense counsel has the final authority as to whether or not the defense will call a particular witness to testify at the criminal trial. For the reasons set forth in this opinion, we approve the decision of the Fourth District in Puglisi and disapprove the decision of the Fifth District in Cain. We also recede from our decision in Blanco v. State, 452 So.2d 520 (Fla.1984), to the extent that we held that the ultimate deci *1198 sion rests with the defendant as to the presentation of witnesses.
FACTS
Vincent Puglisi and Rex Ditto were both charged with the first-degree murder of Alan Shalleck.[1] At Puglisi’s trial, the State established that on February 7, 2006, the victim’s body, wrapped in trash bags, was discovered on his residential driveway in Boynton Beach. There was a trail of drag marks between the victim’s body and his carport door. Blood was “everywhere” inside the victim’s bathroom. Both Ditto and a Michael Raber could not be excluded from a DNA mixture obtained from a bent, bloody knife found in the victim’s home. Two broken, bloody knife blades were also found at the. crime scene. None of Pugli-si’s DNA was discovered on the recovered knives. The victim's bedroom was in disarray. A large pool of blood was discovered on the bedroom carpet. The victim died from multiple stab wounds and blunt head trauma, having received eighty-three blunt force injuries and thirty-seven sharp force injuries.
Further investigation revealed that on the morning of February 5, 2006, Puglisi had placed a telephone call to the victim. Detectives met with Puglisi on February 8, 2006. Puglisi was informed by the detectives that they were conducting a homicide investigation. Puglisi agreed to go to the police station with the detectives, where Miranda[2] warnings were given. Puglisi told the detectives that .he and the victim were friends, although they had engaged in a sexual relationship in the past. Pugli-si maintained that he had not seen the victim for one to two months, but admitted to having the telephone conversation with the victim on February 5, 2006. In accounting for his whereabouts on February 5, 2006, Puglisi said that he went out to dinner with Ditto, the man he was dating, and then went home.
After the interview concluded, Puglisi was told that the crime scene had been described as gruesome. Puglisi was then asked if he thought Ditto was capable of doing something like that to the victim. Puglisi responded: “You know what, he’s the kind of guy that could do something like that to him.” Puglisi added that he observed Ditto cleaning the front seat of Puglisi’s vehicle with bleach in the early morning hours of February 6, 2006. Pu-glisi also said that he saw Ditto burning clothing, documents, and other items in the backyard of Puglisi’s home.[3]
In a second interview with law enforcement, Puglisi admitted that he and Ditto went over to the victim’s home on February 5, 2006. While there, Puglisi observed the victim performing oral sex on Ditto in his bedroom. Ditto “freaked out” and strangled the victim. Ditto said to Puglisi, “come on, let’s do it,” and asked Puglisi for help. Ditto beat the victim on his head with a paddle. In an effort to hold the victim down, as it was requested by Ditto, Puglisi placed a pillow over the victim’s face.[4] Ditto retrieved a knife from the *1199 kitchen which he used to stab the victim. While breaking two knives in the process, Puglisi estimated that Ditto stabbed the victim close to one hundred times. Maintaining that he was afraid, Puglisi said that he refused to stab the victim. After he could no longer handle being there, Puglisi went into the living room while Ditto continued to stab the victim. Puglisi did admit to throwing glass candle holders at the victim. After the attack, Puglisi and Ditto both dragged the victim’s body out to the front of the house.[5]
During the interview, Puglisi disclosed that Ditto had plans to rob, knife, strangle, “bash” the victim’s head in, and kill the victim. The plans also included taking the victim’s body to Alligator Alley. Puglisi said that he did not think Ditto was going to do “this,” and even had tried to talk Ditto out of it. Puglisi also told the detectives:
I would never do or plan anything like this. It’s no excuse, but I was in love with [Ditto] and went along with his plan because of the fact that I cared about him and I did not realize the seriousness of the consequences ... I’m sorry and I think it’s a horrible crime. I’ll always be sorry and regret this. I really f* * *ed up my life ... I’m sorry I did that. It’s not even worth it.[6]
After the State rested on a Friday, counsel for Puglisi informed the trial judge that the defense still had a possible witness that they were going to speak with. When counsel returned to court on Monday, the following discussion transpired regarding Ditto:
DEFENSE COUNSEL: [0]ver the weekend we learned that Mr. Ditto is prepared to testify that Mr. Puglisi did nothing, that he — Mr. Ditto is the sole one responsible for the death of Mr. Shalleck and that he lied in the past because of his fear of the death penalty.
[[Image here]]
[We] have not had an opportunity to do what we would need to do to determine whether we were going to call Mr. Ditto or not as a witness to really even make that determination plus I’m not sure what he would say from day to day and would need to re-depose him, discuss it at greater length his reason for lying in the past, if that’s what he’s maintaining at this point....
[[Image here]]
STATE: When I saw Mr. Ditto, I confronted him with what [a cellmate of his] told me which was essentially that Ditto had told him that he had done all of the acts resulting in the death of Mr. Shal-leck and Mr. Puglisi had done none and he says, yes that’s true. I said that to him. And I said, well, is that true? He says yes, it is. I said what about all the statements that you made. He said, well previously I lied to avoid the death penalty and I said well, what if you are called by either side to testify in the trial, what are you going to -say at that point in time and his response to me was, I’m probably going to lie and testify consistently with my previous statement.
[[Image here]]
DEFENSE COUNSEL: I agree Mr. Ditto has made various statements. What concerns me is that at this point he is saying his prior statements were *1200 involuntarily [sic] because of the threat of the death penalty.... So one of the things, of course, that we are concerned about should we be — if we were to call him, we first would have to litigate admissibility of his prior inconsistent statement. ... [Tjhere is all sorts of other evidence that would come in as prior statements that would impact his, you know, our decision about him testifying without litigating those issues first.[7]
THE COURT: So what about defense witnesses. Does defense intend to call witnesses?
DEFENSE COUNSEL: No....
THE COURT: Okay. Because I’m prepared to allow you to continue to decide whether or not you wish to call Mr. Ditto.
DEFENSE COUNSEL: Judge, I think we need to explore-Mr. Ditto may be taking a formal deposition, see what he has to say.
[[Image here]]
THE COURT: I am going to grant the continuance but deposition, will obviously have to be expedited.
DEFENSE COUNSEL: [W]e were never going to call Mr. Ditto.
Ditto was then deposed where he indicated that he “told a variety of people that Mr. Puglisi was not involved in this.” When counsel returned to court later in the day, counsel for Puglisi said, “Since February of [2008] when we took [Ditto’s] deposition, we had no information that [Ditto] would ever say anything different than what he said in his deposition until this weekend.” Defense counsel articulated to the trial court the predicament faced by the defense:
[T]he obvious concern is that if we were to call Mr. Ditto at this point, State would impeach him with a prior inconsistent statement which would then make any prior consistent statement be admissible and in order to pursue what those statements are, we have to interview all of these people.
[[Image here]]
[W]e’re really in a ... catch-22 and our hands are tied in being able to present a defense for Mr. Puglisi in that ... obviously a very significant witness in this case has exculpatory testimony that we are unable to present without being able to have the opportunity to properly investigate the statement, the surrounding circumstances and his surrounding circumstances.
The trial court denied the defense’s renewed motion for mistrial, but gave the defense until the next day to bring in witnesses who allegedly heard Ditto make these prior consistent statements.
The following day, defense counsel sought more time to investigate, but ultimately rested after stating that the defense did not intend to call any witnesses. Thereafter, a sidebar conference was held. Referring to Ditto, the trial court said, “Mr. Puglisi, you need to speak to your attorney” and “[t]he decision is up to the defense and Mr. Puglisi however you wish to proceed.” After a short recess, the following critical exchange took place:
THE COURT: [Defense Counsel], have you made a decision?
DEFENSE COUNSEL: Yes, Judge. At this time with respect to that issue, Judge. I’m just going to rely on what has been previously stated on the record. I know the Court’s position regarding that, Judge. At this time Mr. Puglisi’s lawyers ... have decided that ... we do not wish to call Mr. Ditto; *1201 however, I believe Mr. Puglisi ... has another position regarding that issue.
THE COURT: Okay. What do you want to tell me, Mr. Puglisi?
PUGLISI: I’d like to call Mr. Ditto.
THE COURT: Well, you have some of the best attorneys in the courthouse and they are advising you against that, do you understand that?
PUGLISI: Yes.
THE COURT: And in the end this is your trial, but I’m serious these attorneys are very, very experienced, excellent attorneys and it’s their opinion that you should not call Mr. Ditto in the proceeding, do you understand that?
PUGLISI: Yes.
THE COURT: And you still want him to be called as a witness?
PUGLISI: Yes.
THE COURT: All right. Anybody else want anything else on the record?
DEFENSE COUNSEL: Judge, we’re not going to call Mr. Ditto.
THE COURT: You’re not going to call Mr. Ditto? Well, do you want to tell me a little bit more about that, [defense counsel]? I mean, in the end I think we all know full and well and vetted this pretty well over the last several days what Mr. Ditto would testify to and I understand there’s attorney/client privilege and ... Mr. Puglisi is saying he wants Mr. Ditto to be called and this is obviously going to be an issue the appellate courts will look at.
So Mr. Puglisi, in order to explore that I want to ask [defense counsel] some questions that would invade your attorney/client privilege, do you understand that?
PUGLISI: Yes, Your Honor.
THE COURT: And do you waive your right to keep ... that privilege? I need to discuss with [defense counsel] why that decision is being made against your wishes and I want her to be able to discuss with me things that she might have discussed with you that would fall under what is known as the attorney/client privilege, do you understand that?
PUGLISI: I’m not—
THE COURT: Anything that you tell any of your attorneys is private and confidential and cannot be disclosed to anyone. It is a tightly kept secret and under the law it cannot be disclosed. That’s known as the attorney/client privilege, do you understand that?
PUGLISI: I understand that.
THE COURT: And this is a big deal here that you want to call a witness in your own defense and your three attorneys do not believe that that is in your best interest and best for the case and I’m sure they’ve discussed that with you, is that correct?
PUGLISI: (Nods head.)
[[Image here]]
THE COURT: All right. And so ... obviously if there were to be a conviction in this case that the appellate courts are going to look at the fact that you wanted that witness called and your attorneys didn’t. So, I want to do a question and answer session with the lawyers so that they can tell me why they are making that decision and it might entail them discussing things that would have been attorney/client privilege or would have been conversations that they had with you that shouldn’t be disclosed because of that. So, do you waive the right to have those discussions kept confidential?
PUGLISI: I don’t understand what that means.
THE COURT: Well, this is really a big issue.
PUGLISI: Right, I understand that.
*1202 THE COURT: You want something and your, attorneys don’t believe that it’s in your best interest.
PUGLISI: I understand that.
THE COURT: And you have now stated on the record that you want Mr. Ditto to be called as a witness.
PUGLISI: Yes.
THE COURT: So, I want your attorneys to tell me why they have made that decision and why they’re going against your wishes, do you understand that?
PUGLISI: Do you want me to answer that or the attorneys to answer that?
THE COURT: Well, do you feel like you’ve had ample time to discuss with your attorneys why they think it’s not in your best interest?
PUGLISI: We don’t agree on a lot of stuff. My attorneys want me to take a plea, I do not want to take a plea. They talk to me every day about a plea. I don’t want to take a plea. As far as my attorneys are concerned, it’s hopeless, I’m gonna — they’ve already got me hung, I’m losing the case. That’s why I figured, well, if I have nothing to lose, that’s why I want to call Mr. Ditto, because that’s maybe my one last chance of hope, you know, if he’ll come clean and be honest and that’s what’s going on.
[[Image here]]
THE COURT: Do you need more time to discuss this matter with your client?
DEFENSE COUNSEL: I’m not requesting more time to discuss it with Mr. Puglisi.
[[Image here]]
THE COURT: Okay. All right, the defense’s position is you don’t intend to call Mr. Ditto, is that correct?
DEFENSE COUNSEL: That is correct.
THE COURT: All right, Mr. Puglisi, let me just say this, your attorneys are excellent attorneys, they really are. And they have been doing a spectacular job representing you. So, I know that you have indicated you have some discontent about the way things are proceeding and that you disagree with then-strategy decision not to call Mr. Ditto and I know that you have been sitting here throughout the discussion of what the issues are as it relates to Mr. Ditto, but your attorneys have discussed it at length amongst themselves and with you, some of which has occurred in my presence. So, I’m sorry and it’s unfortunate that you disagree with their strategy but they represent you and that’s their decision.[8]
After closing arguments, the trial judge “conduet[ed] an ex parte with regard to a strategic decision:”
THE COURT: [I]n closing there was a concession to guilty on the lesser, was that discussed with your client?
DEFENSE COUNSEL: I know, I discussed that.
[[Image here]]
THE COURT: Let me ask you, there was a strategic decision to admit to lessens based on evidence that was presented, did you make a strategic decision to concede the lesser of culpable negligence which is a misdemeanor?
DEFENSE COUNSEL: Yes.
THE COURT: And theft which also is a misdemeanor.
DEFENSE COUNSEL: (Nods head.)
*1203 THE COURT: So they made a strategic decision, is that correct?
DEFENSE COUNSEL: That’s right.
THE COURT: To concede to two misdemeanors rather than just standing up and saying that you were completely innocent, the record will reflect that was discussed and talk[ed] about and it was a strategic decision, is that correct?
DEFENSE COUNSEL: The Court’s right.
THE COURT: All right, Mr. Puglisi?
PUGLISI: I didn’t talk to them about any of this. I still want Mr. Ditto to come.
THE COURT: Pardon me?
PUGLISI: I still want Mr. Ditto, I don’t understand.
THE COURT: I understand, I understand, sir. Listen to me—
PUGLISI: I have no idea what’s going on.
THE COURT: All right. Well, I’m talking to you.
PUGLISI: I mean—
THE COURT: I know and recognize that you wanted Mr. Ditto, the co-defendant, right and there was a great deal of discussion about that. So, I’m asking defense to indicate whether or not there was a strategic decision to not call Mr. Ditto?
DEFENSE COUNSEL: It was a strategic decision amongst his lawyers.
THE COURT: Pardon me?
DEFENSE COUNSEL: Based on the rulings of the Court.
THE COURT: Okay. And were there any other witnesses that you wanted them to call that you discussed.
PUGLISI: I wanted some other witnesses called ... but you know, like, that’s not going [to] happen.
THE COURT: ■ And you discussed that, right?
DEFENSE COUNSEL: Huh huh.
[[Image here]]
THE COURT: You didn’t want to testify, you wanted Mr. Ditto to testify?
PUGLISI: Yeah, I wanted Mr. Ditto to testify, I still do, yeah.[9]
Puglisi was convicted of first-degree murder and robbery with a deadly weapon. Puglisi waived his right to a penalty phase jury. Puglisi was sentenced to life imprisonment for the murder conviction, and a concurrent term of thirty years in prison for the robbery with a deadly weapon conviction.
On appeal to the Fourth District, Puglisi argued that the trial judge erred “in refusing to allow him to call Ditto as a witness despite defense counsel’s determination that calling Ditto would not be of benefit to Puglisi’s case.” Puglisi, 56 So.3d at 792. The district court found “particularly instructive” the decision in United States v. Burke, 257 F.3d 1321 (11th Cir.2001). Id. In Burke, the Eleventh Circuit Court of Appeals explained that the United States Supreme Court “has said that a defendant has the ultimate authority to make fundamental decisions for his case ... [which are] whether to plead guilty, waive a jury, testify in his or her own behalf or to take an appeal.” 257 F.3d at 1323 (citing Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).
The Fourth District below held that “[determining which witnesses should be called by the defense is not a fundamental decision to be made by the defendant him *1204 self,” and therefore, the district court concluded that the trial court did not commit error in refusing to have Ditto called as a witness. Puglisi, 56 So.3d at 793. The district court expressed that “such a decision is better made by a professional advocate who is considering not just what the anticipated testimony might be, but issues of credibility and potential harm to the defendant as well.” Id. The Fourth District found “inapposite” our decision in Blanco: “The Supreme Court’s holding that the trial court allowing defendant to call the witnesses in Blanco did not constitute reversible error does not mean that the trial court’s refusal to allow Puglisi to call Ditto in the instant case is reversible error.” Id. Puglisi’s convictions and sentences were affirmed by the Fourth District. Id. at 794.[10]
Subsequently, Puglisi moved for rehearing and certification of conflict. The Fourth District denied Puglisi’s motion for rehearing. Id. at 794. In granting his motion for certification of conflict, the Fourth District said: “[t]o the extent our [opinion in Puglisi ] conflicts with the opinion of the Fifth District Court of Appeal in Cain v. State, 565 So.2d 875 (Fla. 5th DCA 1990), we certify conflict to the Supreme Court of Florida.” Id.[11]
ANALYSIS
The question before this Court is whether it is the criminal defendant or defense counsel who has the ultimate authority in the decision to have a witness testify for the defense. “Pure questions of law are subject to de novo review.” Sanders v. State, 35 So.3d 864, 868 (Fla.2010). Puglisi contends that a competent defendant, especially one facing the death penalty, should not be deprived of the right to make tactical decisions merely because trial counsel disagrees. Puglisi relies on Blanco, where we held that “the trial court did not err in allowing appellant to present witnesses,” and that “[t]he ultimate decision is the defendant’s.” 452 So.2d at 524.
Fundamental Decisions
In Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the United States Supreme Court held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the criminal defendant requests to be raised on appeal so long as counsel uses professional judgment in deciding not to raise those issues. Id. at 754, 103 S.Ct. 3308. A contrary holding would “seriously undermine[ ] the ability of counsel to present the client’s case in accord with counsel’s professional evaluation” and “would disserve the very goal of vigorous and effective advocacy.” Id. at 751, 754, 103 S.Ct. 3308. Notably, the Supreme Court explained:
It is also recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal, see Wainwright v. Sykes, 433 U.S. 72, 93 n. 1 [97 S.Ct. 2497, 53 L.Ed.2d 594] (1977) (Burger, C.J., concurring); ABA Standards for Criminal Justice 4-5.2, 21-2.2 (2d ed. 1980). In addition, we have held that, with some limitations, a defendant *1205 may elect to act as his or her own advocate, Faretta v. California, 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (1975).
Id. at 751, 103 S.Ct. 3308 (emphasis added); see also ABA Model Rule of Prof. Conduct 1.2(a) (“In a criminal case, the lawyer shall abide by the client’s decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.”); ABA Standards for Criminal Justice 4-5.2(a), at 199 (3d ed. 1993) (stating that the decisions to made by the accused include: what pleas to enter; whether to accept a plea agreement; whether to waive jury trial; whether to testify in his or her own behalf; and whether to appeal); Rule 4-1.2(a), Rules Regulating the Florida Bar (“In a criminal case, the lawyer shall abide by the client’s decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.”).
Whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal are “all the Supreme Court has said about fundamental rights that belong solely to the defendant for decision.” Burke, 257 F.3d at 1323. To be sure, in Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), the United States Supreme Court explained:
An attorney undoubtedly has a duty to consult with the client regarding “important decisions,” including questions of overarching defense strategy.[12] Strickland [v. Washington], 466 U.S. [668,] 688 [104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]. That obligation, however, does not require counsel to obtain the defendant’s consent to “every tactical decision.” Taylor v. Illinois, 484 U.S. 400, 417-18 [108 S.Ct. 646, 98 L.Ed.2d 798] (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client’s approval). But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has “the ultimate authority” to determine “whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.” Jones v. Barnes, 463 U.S. 745, 751 [103 S.Ct. 3308, 77 L.Ed.2d 987] (1983); Wainwright [], 433 U.S. [at] 93, n. 1 [97 S.Ct. 2497] (Burger, C. J., concurring). Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.
Id. at 187, 125 S.Ct. 551. These fundamental decisions “are comprehensible to a lay person, and because they are so few (and so vital) it is feasible to require the judge or counsel to inform the defendant about the likely consequences of exercising one option rather than another.” United States v. Boyd, 86 F.3d 719, 723-24 (7th Cir.1996).
As eloquently stated by the Eleventh Circuit Court of Appeals:
Defense counsel in a criminal trial is more than an adviser to a client with the client’s having the final say at each point. He is an officer of the court and a professional advocate pursuing a result — almost always, acquittal — within the confines of the law; his chief reason for being present is to exercise his professional judgment to decide tactics.
[[Image here]]
When the defendant is given the last word about how his case will be tried, the defendant becomes his own trial law *1206 yer. If we add to the list of circumstances in which a defendant can tramp his counsel’s decision, the adversarial system becomes less effective as the opinions of lay persons are substituted for the judgment of legally trained counsel. The sound functioning of the adversarial system is critical to the American system of criminal justice. We intend to defend it.
Burke, 257 F.3d at 1323.[13] “[T]he lawyer has — and must have — full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval.” Taylor, 484 U.S. at 418, 108 S.Ct. 646.
In his concurring opinion in Wainwright v. Sykes, Chief Justice Burger specifically mentioned the tactical decision at issue in the instant case:
Once counsel is appointed, the day-today conduct of the defense rests with the attorney. He, not the client, has the immediate-and ultimate-responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop. Not only do these decisions rest with the attorney, but such decisions must, as a practical matter, be made without consulting the client. The trial process simply does not permit the type of frequent and protracted interruptions which would be necessary if it were required that clients give knowing and intelligent approval to each of the myriad tactical decisions as a trial proceeds.
433 U.S. at 93, 97 S.Ct. 2497 (emphasis added and footnotes omitted) (Burger, C.J., concurring); see also Taylor, 484 U.S. at 418, 108 S.Ct. 646 (“Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer’s decision ... to decide not to put certain witnesses on the stand....”).
We hold that the decision to present witnesses is not a fundamental decision resting exclusively with a criminal defendant when he or she is represented by counsel. Defense counsel must have the ultimate authority in exercising his or her client’s constitutional right to present witnesses as such is a tactical, strategic decision within counsel’s professional judgment.[14] Therefore, if a criminal defendant disagrees with his or her attorney as to whether to have a witness testify at trial, it is the defense counsel who has the ultimate authority on the matter so long as he or she continues to represent the defendant.[15] The decision ultimately made by counsel is and must be binding on his or her client. See Faretta v. California, 422 U.S. at 820, 95 S.Ct. 2525 (“[W]hen a defendant chooses to have a lawyer manage and present his case, law and tradition *1207 may allocate to the counsel the power to make binding decisions of trial strategy in many areas.”). A contrary holding would “seriously undermine[ ] the ability of counsel to present the client’s case in accord with counsel’s professional evaluation,” see Jones, 463 U.S. at 751, 103 S.Ct. 3308, “disserve the very goal of vigorous and effective advocacy,” see id. at 754, 103 S.Ct. 3308, and likely pave the way for strategic decisions ordinarily entrusted by trained counsel to be delegated to the accused.[16]
This Case
Applying our holding to the case at hand, we conclude that Puglisi was not deprived of his constitutional rights to make fundamental decisions regarding his case. Puglisi’s defense counsel had the ultimate decision-making authority on whether Ditto would testify for the defense. Counsel’s decision to not have Ditto testify was binding on Puglisi even though such decision was contrary to Pu-glisi’s wishes. Accordingly, the trial court did not err in proceeding in accordance with defense counsel’s decision.[17]
Contrary Decisions
In Blanco, the defendant contended on appeal that the trial court erred in allowing him to call witnesses against the advice of counsel. 452 So.2d at 524. Finding that the trial court did not err “[u]nder the[] circumstances,” we said that “[t]he ultimate decision is the defendant’s.” Id. (citing Milligan v. State, 177 So.2d 75 (Fla. 2d DCA 1965)).[18] In light of our holding above, we recede from our decision in Blanco to the extent that we held that as to the presentation of witnesses the ultimate decision is the defendant’s.
In Cain, the defendant made the final selection of the jurors after there was a disagreement with defense counsel. 565 So.2d at 876. The Fifth District Court of Appeal held:
The lawyer’s function is to present alternative courses of action, not make decisions in contravention to his client’s *1208 wishes. Milligan v. State, 177 So.2d 75 (Fla. 2d DCA 1965). In cases where the attorney and the defendant disagree as to trial strategy, the defendant must make the ultimate decision. Blanco v. State, 452 So.2d 520 (Fla.1984).
Id. Based on our holding above, we disapprove of the holding reached by the Fifth District in Cain.
CONCLUSION
Based on the foregoing, we approve of the Fourth District’s decision in Puglisi and disapprove of the Fifth District’s decision in Cain. We also recede from our decision in Blanco to the extent that we held that as to the presentation of witnesses the ultimate decision is the defendant’s.
It is so ordered.
POLSTON, C.J., and LEWIS, CANADY, LABARGA, and PERRY, JJ„ concur.
PARIENTE, J., specially concurs with an opinion.

. Ditto pled guilty to the first-degree murder charge and was sentenced to life in prison prior to Puglisi's trial.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Law enforcement discovered the victim’s burnt and ashen keys in a burn pile at Pugli-si's residence.

.Puglisi could not be excluded from a DNA profile obtained from the pillow at twelve of the sixteen genetic markers. The areas around the victim’s nose and mouth were consistent with an individual applying pressure with a pillow, but there was no testimony that the victim died of asphyxiation related to any smothering or suffocation.

. Puglisi admitted to stealing the victim’s watch, a gold ring, and some change. Puglisi also said that Ditto had stolen a check belonging to the victim.

. At trial, the State offered the testimony of Joseph Carney, who was a friend of Puglisi. Carney testified that while visiting Puglisi in jail, Puglisi told him, "I killed the old son of a b*tch, now what do you want out of me.”

. The trial court then denied the defense's motion for a mistrial.

. The State brought to the attention of the trial court our decision in Blanco, where we held that the trial court did not commit error in allowing the accused to present witnesses, explaining that "[t]he ultimate decision is the defendant’s.” 452 So.2d at 524.

. The trial court below did not conduct a Nelson inquiry. See Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), approved by Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.1988).

. The Fourth District also rejected Puglisi’s claims that the trial court committed error when it: (1) denied his motion for a continuance; (2) refused to suppress statements made by Puglisi; and (3) admitted photographs of the crime scene. Id. at 793-94.

. With approval of the chief judge of the Fourth District only two district court judges participated in the motions for rehearing and certification of conflict due to the retirement of Judge Farmer. Id. at 794 n. 1.

. In Florida, counsel "shall reasonably consult with the client as to the means by which [objectives] are to be pursued.” R. Regulating Fla. Bar 4-1.2(a).

. The Eleventh Circuit in Burke held "that the decision to refrain from asking the court for a mistrial is a tactical decision entrusted to defense counsel, binding the defendant even when the defendant expressed a contrary wish to his lawyer.” Id. at 1324.

. We have previously said that "[t]here is no constitutional right for hybrid representation at trial.” Mora v. State, 814 So.2d 322, 328 (Fla.2002); see Sheppard v. State, 17 So.3d 275, 279 (Fla.2009) ("[A] defendant has no Sixth Amendment right to simultaneously proceed pro se and with legal representation.... Likewise, article I, section 16 of the Florida Constitution 'does not embody a right of one accused of crime to representation both by counsel and by himself.' ”) (quoting State v. Tait, 387 So.2d 338, 340 (Fla.1980)). Here, we find that Puglisi did not request to discharge his counsel nor did he request to represent himself.

.See also R. Regulating Fla. Bar 4-1.2(a) cmt. ("[A] lawyer is not required to ... employ means simply because a client may wish that the lawyer do so.”).

.Our holding is in accord with the law of many other jurisdictions. See, e.g., State v. Lee, 142 Ariz. 210, 689 P.2d 153, 158 (1984) ("[T]he power to decide questions of trial strategy and tactics rests with counsel, and the decision as to what witnesses to call is a tactical, strategic decision.”) (citations omitted); State v. Flanagan, 2010 WL 5188433, at *6 (Conn.Super.Ct.2010) ("To allow a defendant’s desire to call witnesses in contravention of an attorney’s expert decision would create an atmosphere of disruption for the defendant, the state and the fact finder during the trial.”); Cooke v. State, 977 A.2d 803, 840-41 (Del.2009) (”[T]he defense attorney 'has the immediate and ultimate responsibility of deciding ... which witnesses, if any, to call....’”) (quoting Sykes, 433 U.S. at 93, 97 S.Ct. 2497 (Burger, C.J., concurring)); Boyd v. United States, 586 A.2d 670, 673 (D.C.1991) ("It is, of course, beyond dispute that counsel for the accused has ultimate responsibility for many tactical trial decisions, such as which witnesses to call....”); Upton v. Parks, 284 Ga. 254, 664 S.E.2d 196, 200 (2008) ("Given that the authority to decide which witnesses to call ultimately rests with defense counsel, counsel’s exercise of that authority, even in a manner with which the accused disagrees, cannot form the basis for a Sixth Amendment compulsory process violation.”); People v. Clendenin, 238 Ill.2d 302, 345 IIl.Dec. 467, 939 N.E.2d 310, 320 (2010) ("[Tjrial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consulting with his client, including ‘what witnesses to call....’”) (quoting People v. Campbell, 208 Ill.2d 203, 280 IIl.Dec. 684, 802 N.E.2d 1205, 1209 (2003)).

. We make no determination as to whether the decision made by defense counsel was a reasonable decision, as such determination is for postconviction.

. In Milligan, the Second District Court of Appeal said that ”[t]he ultimate decision-making function is to be left to the client.” 177 So.2d at 77.