# Third District Court of Appeal
## State of Florida

Opinion filed November 23, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-198
Lower Tribunal No. F08-41705
_____


**Tommie McClenney, Jr.,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Lourdes Simon, Judge.

Tommy McClenney, Jr., in proper person.

Ashley Moody, Attorney General, and Sandra Lipman, Assistant Attorney General, for appellee.


Before EMAS, SCALES and LOBREE, JJ.

EMAS, J.

Tommy McClenney, Jr., filed a motion for postconviction relief in the trial court, asserting six claims of ineffective assistance of counsel. The trial court summarily denied five of the six claims, properly issued a nonfinal, nonappealable order on those claims (see Florida Rule of Criminal Procedure 3.850(f)(4)[1]) and scheduled an evidentiary hearing on the remaining claim. Following that hearing, the trial court issued a final, appealable order denying all six claims. This appeal follows.

We find no merit in any of McClenney's claims, affirm the trial court's order in its entirety, and write to address McClenney's claim that trial counsel provided ineffective assistance in advising McClenney against testifying and

---

[1] Fla. R. Crim. P. 3.850(f)(4) provides:

> If the motion sufficiently states 1 or more claims for relief but the files and records in the case conclusively show that the defendant is not entitled to relief as to 1 or more claims, the claims that are conclusively refuted shall be summarily denied on the merits without a hearing. A copy of that portion of the files and records in the case that conclusively shows that the defendant is not entitled to relief as to 1 or more claims shall be attached to the order summarily denying these claims. The files and records in the case are the documents and exhibits previously filed in the case and those portions of the other proceedings in the case that can be transcribed. An order that does not resolve all the claims is a nonfinal, nonappealable order, which may be reviewed when a final, appealable order is entered.

that, as a result, McClenney's decision not to testify was not a knowing and voluntary one.

We first note that the Sixth Amendment,[2] which guarantees each criminal defendant "the Assistance of Counsel for his defence," imposes a duty on defense counsel to advise the client, and this duty extends to providing advice regarding the client's decision to testify or not testify at trial. Indeed, at the evidentiary hearing held on McClenney's postconviction claim, trial counsel testified that he had a lengthy discussion with McClenney about whether he should testify. Trial counsel also testified to the strategic reasons he had for (ultimately) recommending to McClenney that he not testify at trial. The trial court found trial counsel's testimony credible and objectively reasonable, and we find no error in these determinations. See Bradley v. State, 33 So. 3d 664, 671 (Fla. 2010) (holding that appellate court defers to trial court's factual findings supported by competent substantial evidence and: "When examining counsel's performance, an objective standard of reasonableness applies, and great deference is given to counsel's performance. The defendant bears the burden to 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' This court has made clear that 'strategic

---

[2] U.S. Const. amend. VI.

3

decisions do not constitute ineffective assistance of counsel.' There is a strong presumption that trial counsel's performance was not ineffective.") (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984) (additional quotations omitted)).

Further, the transcript of the trial reveals the trial court conducted a colloquy with McClenney regarding his decision not to testify in his own defense. See, e.g., Gonzalez v. State, 990 So. 2d 1017, 1031-32 (Fla. 2008) ("Although this Court has held that 'a trial court does not have an affirmative duty to make a record inquiry concerning a defendant's waiver of the right to testify,' this Court has stated that . . . 'it would be advisable for the trial court . . . to make a record inquiry as to whether the defendant understands he has a right to testify. . . .'" (quoting Torres-Arboledo v. State, 524 So. 2d 403, 411 n.2 (Fla. 1988))).

The trial court properly colloquied McClenney to ensure it was his decision not to testify at his trial, and that his decision was knowing and voluntary, made after an opportunity to consult with his attorney. Here is an excerpt of the colloquy undertaken by the trial court after the State had formally rested its case and prior to the defense formally resting its case:

> THE COURT:  Mr. McClenney, you're welcome to sit.  You're welcome to sit, and he was sworn yesterday?
>
> DEFENSE COUNSEL:  Yes, he was.

THE COURT: Okay. You have an absolute Constitutional right that's guaranteed by our Federal and also our Florida Constitution to remain silent and not incriminate yourself. If you do exercise your right—your right not to testify in your trial, then I would instruct then I would instruct the jury, if your -- if your attorneys request.

***

And my understanding from your lawyers is that is what you would like to do and that you've had the opportunity to speak with them about it. Now, you also have an absolute right to be a witness in your case and to take the stand and to testify in this case. That is another right that you have that is also guaranteed by the Constitutions; and if you were to testify in the case, I would instruct the jury that your testimony should be considered the same as every other witness in the case. You don't get special treatment. You are not treated worse or better than any other witness in the case. If you were to testify, I do know, just by the virtue of the fact that there was a charge for carrying a firearm by a career criminal, that you must have felony convictions. I don't know how many; but the jury would learn if you were to testify. If you answer questions truthfully, they would only learn two things. The prosecutor could ask you have you ever been convicted of a felony, and your answer would be yes; and if so, how many times, and I would ask the lawyers to confer with each other to make sure it's accurate so that you're well informed how many times. And if your answer is truthful, they can't go any further into that.[3]

---

[3] We include this aspect of the colloquy for a separate but significant reason: Trial courts often encounter postconviction motions asserting ineffective assistance of counsel based on the allegation that counsel affirmatively misadvised the defendant that, should he testify at trial, the jury would be told the specific details of the prior crime(s) for which he was previously convicted. Absent record evidence to rebut such an assertion in a postconviction motion, the trial court would generally be required to hold an evidentiary hearing to make factual and credibility-based determinations. See, e.g., Rodriguez v. State, 909 So. 2d 955 (Fla. 3d DCA 2005) (reversing summary denial of motion for postconviction relief and remanding for evidentiary hearing on defendant's claim that attorney affirmatively

So those are the only two questions that they can ask you about that, so long as you are accurate and truthful about how many times. So my first question for you is, have you had the opportunity to sit with your lawyers and go over what it is that I've just explained to you?

DEFENDANT: Yes.

THE COURT: Okay. And you feel fully informed on this—this decision as to whether or not you wish to be a witness in your own case?

DEFENSE COUNSEL: Are you fully informed about—

DEFENDANT: Yes, yes.

THE COURT: Okay. Are there any other questions that you may

_____

misadvised defendant that if he testified the State would be able to place before the jury the details of his prior criminal history); Joseph v. State, 214 So. 3d 741 (Fla. 5th DCA 2017) (reversing summary denial of postconviction claim and holding that, in the absence of records in the case to conclusively show defendant is not entitled to relief on his claim that counsel incorrectly advised him that the jury would learn the specific nature of his prior convictions should he testify, the trial court was required to hold an evidentiary hearing).

However, by engaging in a colloquy such as the one conducted in the instant case, a trial court can help ensure a defendant is adequately informed about the consequences of his decision to testify (i.e., the extent to which he can be impeached with his prior convictions) while also eliminating this as a potential issue in any future postconviction claim, should the defendant be convicted. Trial court judges should be encouraged to make such a colloquy a standard part of their trial procedure. In fact, a trial court might also do well to discuss with the State and defense, prior to the colloquy, the precise number of prior convictions that may be used to impeach the defendant should he decide to testify in his own defense. In this way, the parties can agree on (or the court can determine) the exact number of impeachable convictions, and that information can be shared with the defendant before deciding whether to testify in his own defense.

6

have about whether you are going to testify or not testify, any other issues or concerns or questions that you may have about that issue?

DEFENDANT: No, Judge.

THE COURT: ...And your decision in this case is what?

DEFENDANT: Not to testify.

THE COURT: Okay. And did your lawyers or anyone promise you any—anything, coerce you, threaten you, frighten you, scare you, you know, in any way, do or say anything that—that would weigh on your independent will to make that decision?

DEFENDANT: No.

THE COURT: So this is your decision that you're making?

DEFENDANT: Yes.

We have held, in the analogous context of a plea colloquy, that a defendant is bound by the answers he gives under oath when responding to the court's questions. Rodriguez v. State, 223 So. 3d 1095 (Fla. 3d DCA 2017); Henry v. State, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006) ("This motion presents the all-too-common occurrence where defendants, in an attempt to invalidate their pleas, contend they committed perjury when they sought to have their pleas accepted. Defendants are bound by the statements made by them under oath . . . "); Iacono v. State, 930 So. 2d 829, 831-32 (Fla. 4th DCA 2006) (holding that defendants "are bound by their sworn answers" during a plea colloquy). Indeed, the underlying purpose for

7

the mid-trial colloquy between a defendant and the court regarding a defendant's decision to testify or not testify is quite similar to the reasons for engaging in a plea colloquy—to ensure that the defendant has had sufficient time to discuss his decision with counsel; that he understands the rights he has and the rights he is relinquishing or exercising; that his decision is being made knowingly, freely and voluntarily; and that the defendant is ultimately the one making this decision.  It is well established that a  defendant has the ultimate authority to make certain fundamental decisions in his or her case— "notably, whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." McCoy v. Louisiana, __ U.S. __, 138 S.Ct. 1500, 1508 (2018) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).[4]  See also Puglisi v. State, 112 So. 3d 1196 (Fla. 2013).

---

[4] Though not relevant to our decision, we note that the United States Supreme Court in McCoy added one more item to the category of decisions reserved to the client:

> Autonomy to decide that the objective of the defense is to assert innocence belongs in this. . . category.  Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*.

McCoy v. Louisiana, __ U.S. __, 138 S.Ct. 1500, 1508 (2018).

McClenney's claim that his decision not to testify was not a knowing and voluntary one is belied by his own answers to the trial court's questions. See Reynolds v. State, 99 So. 3d 459, 484 (Fla. 2012) (finding similar colloquy adequate to establish a knowing, voluntary and intelligent waiver of defendant's right to testify, and observing that the colloquy for accepting a defendant's decision to waive his right to testify need not meet the more demanding standards of a "Faretta-type inquiry" required when waiving his right to counsel and seeking to exercise his right to self-representation).

We affirm without further discussion the trial court's order as to the remaining claims raised by McClenney. See Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) (observing that "in the absence of interdistrict conflict, district court decisions bind all Florida trial courts"); Lynch v. State, 254 So. 3d 312, 323 (Fla. 2018) ("[U]nder Strickland [v. Washington, 466 U.S. 668 (1984)], claims of ineffective assistance of counsel are assessed under the law in effect at the time of trial"); Lebron v. State, 135 So. 3d 1040, 1054 (Fla. 2014) ("This Court has 'consistently held that trial counsel cannot be held ineffective for failing to anticipate changes in the law . . .'" (quoting Cherry v. State, 781 So. 2d 1040, 1053 (Fla. 2000))); Hitchcock v. State, 991 So. 2d

337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection.")

Affirmed.