# Supreme Court of Florida

_____

No. SC11-2038
_____

**RICHARD ENGLAND**,
Appellant,

vs.

**STATE OF FLORIDA**,
Appellee.

_____

No. SC13-705
_____

**RICHARD ENGLAND**,
Petitioner,

vs.

**MICHAEL D. CREWS, etc.**,
Respondent.

[July 3, 2014]

PER CURIAM.

Richard England appeals the denial of his motion to vacate his conviction of

first-degree murder and sentence of death filed under Florida Rule of Criminal

Procedure 3.851 and petitions this Court for a writ of habeas corpus.[1]  For the reasons that follow, we affirm the denial of his postconviction motion and deny his habeas petition.

## I. BACKGROUND

The facts of this case were fully set out in this Court's opinion on direct appeal.  See England v. State, 940 So. 2d 389, 393-96 (Fla. 2006).  Briefly, on July 2, 2001, police found Howard Wetherell's body in the shower of his upstairs master bathroom.  Id. at 393.  Wetherell had been beaten to death, and numerous items, including a fire poker and a green Mercury Sable automobile, were missing from his condominium.  Id.  Though "[t]he State's investigation of the crime scene was impeded by a white, powdery substance that had been sprayed over the bloody floor and furniture to cover up and destroy any potential evidence underneath," law enforcement recovered two cigarette butts from an upstairs bedroom.  Id.  DNA on one of the cigarette butts belonged to England, and DNA on the other belonged to Michael Jackson, a friend of England's who had been "liv[ing] with Wetherell trading sex for money and a place to stay" prior to the crime.  Id.  Several days after the murder, Jackson was arrested after wrecking Wetherell's missing car and gave a statement implicating England in Wetherell's murder.  Id.  On November 6,

---

1. We have jurisdiction.  See art. V, § 3(b)(1), (9), Fla. Const.

2003, a Volusia County grand jury indicted England for first-degree felony and premeditated murder and robbery with a deadly weapon. Id. at 394.

At England's trial, in addition to presenting physical evidence linking England to the crime, the State called numerous witnesses to testify regarding England's involvement in Wetherell's murder, including jailhouse informant Steven Diehl, England's friend and drug-dealer fence, Reynaldo DeLeon, England's codefendant Michael Jackson, and Jackson's brother. Id. at 394-96. As detailed in this Court's decision in England's direct appeal, the jury heard statements or testimony from each of these witnesses that implicated England in Wetherell's murder. See id.

The jury found England guilty of first-degree premeditated murder and felony murder and robbery with a deadly weapon. Id. at 396. At the penalty phase, the jury heard testimony from England, who denied killing Wetherell and denied knowing about Wetherell and Jackson's homosexual relationship; two of England's former employers and England's girlfriend, all of whom testified that England's life is worth saving; and a defense investigator, who summarized information obtained from his interviews with England's mother and sister regarding England's difficult childhood, including physical and emotional abuse he suffered. Following the penalty phase, the jury recommended death by a vote of

eight to four.  Id.  The trial court followed the jury's recommendation, finding that

the aggravating circumstances[2] outweighed the mitigating circumstances.[3]

On direct appeal,[4] this Court affirmed England's conviction and death

sentence.  Id.  Thereafter, the United States Supreme Court denied England's

petition for a writ of certiorari.  England v. Florida, 549 U.S. 1325 (2007).

---

2.  "The trial judge found four aggravating factors beyond a reasonable doubt:  (1) that England was under felony probation; (2) that he had a prior violent felony conviction; (3) that the murder was committed during a robbery; and (4) that the murder was especially heinous, atrocious, or cruel[.]"  England, 940 So. 2d at 408.

3.  The trial court did not find any statutory mitigation.  However, it found "strong nonstatutory mitigators and afforded them great weight collectively."  Id.  Specifically, the trial court's sentencing order stated:

> The defense, despite not being allowed enough time by the Defendant to fully develop the sentencing phase, was able to portray the Defendant's other side. . . .  [T]hey showed him to be intelligent, a quick learner, a hard worker.  He is personable, trustworthy, a leader, a good friend, and capable of a loving relationship.  He is all of these things despite a terrible childhood full of abuse, uncertainty and abandonment. . . .  The Defendant was torn from his siblings and raised by [an] abusive man.

4.  England raised the following claims on direct appeal:

> (A) fundamental error occurred because Jackson's testimony included a reference to facts excluded by the trial judge; (B) the jury should have been presented with a special verdict form; (C) certain crime scene and autopsy photographs should not have been admitted because they were gruesome and overly prejudicial; (D) the trial judge admitted testimony in violation of the best evidence rule; (E) the trial judge erred in permitting certain testimony from witness DeLeon; (F) there was juror misconduct; (G) the trial judge erred in finding the heinous, atrocious, or cruel (HAC) aggravator; (H) the trial judge

- 4 -

In 2008, England filed a motion for postconviction relief. The circuit court granted an evidentiary hearing on some of the claims, while summarily denying others. Following the evidentiary hearing, the circuit court entered orders denying relief on all claims.

England appeals the circuit court's denial of postconviction relief and also petitions this Court for a writ of habeas corpus.

## II. POSTCONVICTION MOTION

### A. Ineffective Assistance During the Guilt Phase

First, England argues that his trial counsel was ineffective during the guilt phase for failing to ask witness Steven Diehl questions that would have allegedly revealed that Diehl was a state agent. Because England has failed to establish the requirements necessary for relief, we affirm the circuit court's denial of this claim.

---

violated England's right to a fair sentencing hearing by gagging England during the penalty phase; (I) England's right to testify was violated; (J) the trial judge erred in refusing to permit reverse Williams[ v. State, 110 So. 2d 654 (Fla. 1959),] rule evidence during the penalty phase; (K) the trial judge treated England disparately from codefendant Jackson in sentencing; (L) England's death sentence violates Roper[ v. Simmons, 543 U.S. 551 (2005)]; (M) England's death sentence was not proportional; and (N) England's death sentence violates Ring [v. Arizona, 536 U.S. 584 (2002)].

Id. at 396-97 (footnotes omitted).

Following the United States Supreme Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), this Court has explained that, to prevail on an ineffective assistance of counsel claim, a defendant must satisfy two requirements:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

<u>Bolin v. State</u>, 41 So. 3d 151, 155 (Fla. 2010) (quoting <u>Maxwell v. Wainwright</u>, 490 So. 2d 927, 932 (Fla. 1986)).

Regarding <u>Strickland</u>'s deficiency prong, there is a strong presumption that trial counsel's performance was not ineffective. <u>Strickland</u>, 466 U.S. at 690. Moreover, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689. The defendant bears the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " <u>Id.</u> (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)). Regarding <u>Strickland</u>'s prejudice prong, "the defendant 'must show that but for his counsel's deficiency, there is a reasonable probability that he would have received a different [outcome].' " <u>Tanzi v. State</u>, 94 So. 3d 482, 490 (Fla. 2012) (quoting <u>Porter v. McCollum</u>, 558 U.S. 30, 40 (2009)). "A

reasonable probability is a 'probability sufficient to undermine confidence in the outcome.' " Id. (quoting Strickland, 466 U.S. at 694).

"Because both prongs of Strickland present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court's factual findings that are supported by competent, substantial evidence, but reviewing the trial court's legal conclusions de novo." Dennis v. State, 109 So. 3d 680, 690 (Fla. 2012).

England has not established either deficiency or prejudice. Regarding deficiency, trial counsel identified the possibility that Diehl was acting as a state agent, moved to suppress his testimony, and deposed him on the issue. Trial counsel did not call Diehl to testify during the suppression hearing, and Diehl's deposition occurred after the trial court denied the motion to suppress. Nevertheless, as trial counsel testified in the postconviction evidentiary hearing, had the deposition revealed new facts concerning Diehl's relationship with the State, the motion could have been renewed before Diehl was permitted to testify at trial. However, Diehl's deposition did not reveal any additional evidence that indicated he was a state agent.

Instead, the record shows that England faults his trial counsel for failing to ask Diehl questions that trial counsel actually asked, though trial counsel phrased these questions differently than England now claims he should have. Specifically,

England contends that trial counsel did not adequately question Diehl about his first contact with law enforcement, who initiated that contact, and how Diehl's initial meeting with the detectives investigating Wetherell's murder occurred. But, during Diehl's deposition, trial counsel asked, "When did you first talk to law enforcement about this case?" and "Is it possible you had conversations with law enforcement before or after the taped interview [with detectives]?" In response, Diehl spoke only of meeting with the detectives investigating Wetherell's murder. Similarly, when Diehl was asked at trial how he came to meet with police, he said that he had "requested to do so" "[t]hrough a sergeant of the corrections facility." Diehl also testified at trial that he came forward because he was disturbed by the information England told him—which included England's statement that "he bludgeoned 'an old pervert' to death with a pipe"—because he felt it was his civic duty. England, 940 So. 2d at 395.

Contrary to his deposition and trial testimony, during the postconviction evidentiary hearing, Diehl testified that a jail deputy "informed me that he knew I was kind of buddying up with Richard England and asked me if I would be interested in speaking with anyone about what was to do — you know, information that I heard from Richard England." Though Diehl could not remember the deputy's name, he provided a general physical description. Corrections officers matching this description who were working in Diehl's area of the jail during the

- 8 -

time period in question testified at the evidentiary hearing that they had not contacted Diehl about providing information concerning England and that doing so would have been against their procedure. Though Diehl testified at the evidentiary hearing that the detectives asked him, "off the record," to question England, Diehl consistently testified (both in his deposition and at trial) that the detectives cautioned him against asking England questions, informed him that he could not act as their agent, and did not offer him any benefit in exchange for information or his testimony. At the evidentiary hearing, the detectives testified that they told Diehl that he could not act as their agent or question England, that they did not promise Diehl anything in exchange for information, and that they did not tell Diehl anything different "off the record."

Under the circumstances, trial counsel's attempts to discover whether Diehl was acting as a state agent were entirely reasonable and therefore not deficient. See Simmons v. State, 105 So. 3d 475, 493 (Fla. 2012) (concluding that counsel was not deficient because his actions were "reasonable under the circumstances").

England has also failed to establish prejudice. As we explained in our decision on England's direct appeal, the evidence tying England to Wetherell's murder included physical evidence and incriminatory statements that England made to others implicating himself in the crime. See England, 940 So. 2d at 393-96. For example, the man whom England contacted about fencing items stolen

from Wetherell (Reynaldo DeLeon) testified that England and Jackson "brought antique guns, jewelry, and silver" to his house and "England told [him] that Jackson had hit a man, stolen the items, and then went to find England. England also said that he and Jackson went back to the man's house and found him alive, so England hit the man with a fire poker until he died." Id. at 394.

Given that Diehl's testimony concerning England's statements was cumulative of other incriminatory statements that England made, such as those testified to by DeLeon, there is no reasonable probability that England would have received a different outcome. Our confidence in the outcome is not undermined. See Overton v. State, 976 So. 2d 536, 556 (Fla. 2007) (concluding defendant failed to establish prejudice where similar testimony to that challenged by the defendant supported the conviction).

Accordingly, we deny relief.

### B. Ineffective Assistance During the Penalty Phase

Next, England argues that trial counsel was ineffective for failing to adequately investigate and prepare the penalty phase and counter the State's case in aggravation with additional mitigating evidence. Because England has not established that these alleged failings prejudiced him, we deny relief.

We have repeatedly recognized that where a defendant fails to establish prejudice, it is not necessary to address whether counsel's performance was

deficient.  See, e.g., Allen v. State, 854 So. 2d 1255, 1261 (Fla. 2003) ("Because we hold that Allen fails to establish prejudice, we do not address whether his counsel's performance was deficient.").  For a defendant to establish that he was prejudiced by trial counsel's failure to investigate and present mitigation, the defendant "must show that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence.  To assess that probability, we consider 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the [postconviction] proceeding'—and 'reweig[h] it against the evidence in aggravation.' "  Dennis, 109 So. 3d at 695 (quoting Porter, 558 U.S. at 41 (quoting Williams v. Taylor, 529 U.S. 362, 397-98 (2000))).  "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.' "  Id. (quoting Strickland, 466 U.S. at 694).

During the postconviction evidentiary hearing, England presented testimony from his mother and sister concerning his difficult upbringing, alcohol and drug use, and the physical and emotional abuse he suffered as a child.  Although more detailed, much of their testimony was cumulative to the defense investigator's testimony during the penalty phase, in which he summarized his interviews with England's mother and sister—who, as the postconviction court found, were unavailable to testify before the jury.  Further, though England's mother and sister testified for the first time during the evidentiary hearing that England may have

- 11 -

been sexually abused, their testimony was merely speculative, and England himself has consistently denied ever being the victim of sexual abuse.

In addition to newly-raised speculations of sexual abuse, for the first time at the evidentiary hearing, England presented testimony from a mental health expert, Dr. Carpenter, who testified that England suffered from an extreme mental or emotional disturbance at the time of Wetherell's murder. Specifically, Dr. Carpenter testified that England has bipolar disorder and murdered Wetherell in a "homophobic rage." In support of his diagnosis, Dr. Carpenter explained that England has ego-dystonic homosexuality, meaning that he is a homosexual (or bisexual) but dislikes this about himself because it is at odds with his view of himself as a heterosexual. Dr. Carpenter opined that, in order to eliminate his conflict about his own homosexual urges or actions, England lashed out in a homophobic rage and killed Wetherell. In addition, Dr. Carpenter testified that England had ADHD as a child that went undiagnosed, was held back in school, and that he potentially has brain damage.

However, as the postconviction court explained in its order denying relief, Dr. Carpenter's testimony was refuted by two other mental health experts and England himself. Specifically, Drs. Danziger and Riebsame testified that England

has antisocial personality disorder,[5] that he does not have bipolar disorder, and that there were no statutory mental health mitigators applicable to his case. Dr. Danziger testified that homophobic rage is not recognized in the DSM-IV, and Dr. Riebsame explained that a homophobic rage theory would not be consistent with a first-degree murder like Wetherell's where the evidence shows that the killer had the presence of mind to destroy evidence. Dr. Riebsame further testified that England does not have brain damage but that he does have psychopathic characteristics. And, though Drs. Danziger and Riebsame testified that England suffers from alcohol and polysubstance dependence, there was no testimony that England's alcohol or drug use played a role in Wetherell's murder.

Moreover, England himself rebutted his own expert's homophobic rage theory. Specifically, England denied killing Wetherell, denied knowing that Wetherell was in a homosexual relationship with Jackson, prohibited his trial counsel from making homosexuality an issue in the case, denied that homophobia or homophobic rage had anything to do with the crime, and wrote a letter to the postconviction court requesting that this claim be removed from his postconviction motion because he is not a homosexual.

---

5. Dr. Carpenter testified that England has histrionic personality disorder with antisocial features, but disagreed with Dr. Danziger and Dr. Riebsame's conclusion that antisocial is the dominant personality disorder.

Considering all of the evidence presented during the penalty phase and the evidentiary hearing, the mitigating circumstances would not have outweighed the four aggravating circumstances present in this case, namely HAC, prior violent felony, during the commission of a robbery, and felony probation. See Porter, 558 U.S. at 41; Dennis, 109 So. 3d at 695. There is no reasonable probability that England would have received a different sentence. Our confidence in the outcome is not undermined.

Therefore, we affirm the postconviction court's denial of relief.

### III.  HABEAS PETITION

### A.  Ineffective Assistance of Appellate Counsel

England argues that appellate counsel was ineffective for failing to argue that the trial court (1) abused its discretion by allowing England to revoke his speedy trial waiver; and (2) erred by allowing England to represent himself without making the inquiry required by Faretta v. California, 422 U.S. 806 (1975).

Claims of ineffective assistance of appellate counsel are properly presented in a petition for a writ of habeas corpus. Wickham v. State, 124 So. 3d 841, 863 (Fla. 2013). "The standard of review for ineffective appellate counsel claims mirrors the Strickland standard for ineffective assistance of trial counsel." Id. Specifically, to be entitled to habeas relief on the basis of ineffective assistance of appellate counsel, the defendant must establish

> [first, that] the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, [that] the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

Bradley v. State, 33 So. 3d 664, 684 (Fla. 2010) (quoting Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986)). Further, "appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims." Valle v. Moore, 837 So. 2d 905, 908 (Fla. 2002).

### (1) Speedy Trial

England first contends that appellate counsel was ineffective for failing to argue on direct appeal that the trial court abused its discretion by allowing him to revoke his speedy trial waiver. England is not entitled to relief.

Minutes after agreeing to a continuance that would have waived his right to a speedy trial under Florida Rule of Criminal Procedure 3.191, England told the trial court that he had changed his mind and wanted to go to trial. England made this decision despite being informed that his trial counsel could not adequately prepare for either the guilt or penalty phases without a continuance and despite the trial court's repeated admonitions that England should listen to his attorney. After recognizing that it could "stand on ceremony" and find that England had waived his right to a speedy trial because he had signed the motion for continuance, the

- 15 -

trial court declined to do so, concluding that it was England's right to a speedy trial

if he wanted one, which he clearly did, despite being informed of the risks.

The trial court did not abuse its discretion by giving England the speedy trial

he requested.  See Curtis v. State, 685 So. 2d 1234, 1235-36 (Fla. 1996) (holding

that the trial court did not abuse its discretion by denying defense counsel's request

for a continuance where the "informed and knowing" defendant "remained resolute

in his desire for a prompt trial" even though his counsel represented that he would

be "ill prepared"); see also Charlot v. State, 85 So. 3d 1176, 1178 (Fla. 4th DCA

2012) ("Insisting on the right to a speedy trial is tantamount to objecting to a

continuance of that trial.").  Therefore, appellate counsel was not deficient for

failing to raise this meritless argument on appeal.  See Valle, 837 So. 2d at 908.

Accordingly, we deny relief.

### (2)  Faretta

Next, England claims that appellate counsel was ineffective for failing to

argue on direct appeal that the trial court should have conducted a Faretta inquiry.

Because the trial court did not err, we deny relief.

Florida law is clear that a Faretta inquiry is only required where the

defendant makes an "unequivocal" request for self-representation:

> Under Faretta and our precedent, once an unequivocal request
> for self-representation is made, the trial court is obligated to hold a
> hearing, to determine whether the defendant is knowingly and
> intelligently waiving his right to court-appointed counsel.

- 16 -

Tennis v. State, 997 So. 2d 375, 378 (Fla. 2008).

In this case, England has not argued that he made an unequivocal request for self-representation. Nor does the record reveal such a request. Nevertheless, England claims that the trial court should have conducted a Faretta inquiry on the following occasions: (i) before considering and ruling on oral pretrial motions in which England asked the trial judge to recuse himself and asked for pretrial release so that he could locate an alleged alibi witness; and (ii) before giving England the impression that he could make the final decision about which witnesses to call. However, since England "was not requesting the right to represent himself at the trial, a Faretta hearing was not required." Charlot, 85 So. 3d at 1178. Further, as the State correctly argues, at the time of England's trial in 2004, this Court's decision in Blanco v. State, 452 So. 2d 520, 524 (Fla. 1984), receded from by Puglisi v. State, 112 So. 3d 1196, 1197-98 (Fla. 2013), gave defendants the final say about which witnesses to call.

Accordingly, because the trial court did not err in failing to make a Faretta inquiry, England cannot establish that appellate counsel's failure to raise this issue undermines our confidence in the outcome of his direct appeal. See Gamble v. State, 877 So. 2d 706, 719 (Fla. 2004) ("Because the trial court did not err in failing to make a . . . Faretta inquiry, Gamble cannot demonstrate that failure of

appellate counsel to raise this issue undermined confidence in the outcome of the appeal.").

Therefore, we deny relief.

## B. Remaining Claims

England raises four additional claims in his habeas petition. We summarily deny three of these claims because they are procedurally barred since England raised one of the three on direct appeal and all three in his postconviction motion.[6] Having done so, England may not relitigate them in his habeas petition. See Breedlove v. Singletary, 595 So. 2d 8, 10 (Fla. 1992) ("Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been, should have been, or were raised on direct appeal."); Knight v. State, 923 So. 2d 387, 395 (Fla. 2005) (concluding the defendant was procedurally barred from relitigating his postconviction claims in his habeas petition).

England also raises a cumulative error claim. However, because we find all of England's claims of error to be procedurally barred or otherwise without merit, he is not entitled to relief. See Bell v. State, 965 So. 2d 48, 75 (Fla. 2007)

_____

6. Specifically, England claims that (1) his constitutional right against cruel and unusual punishment will be violated because he may be incompetent at the time of his execution; (2) Florida's capital sentencing scheme is unconstitutional as applied to him under Ring and Apprendi v. New Jersey, 530 U.S. 466 (2000); and (3) Florida's death penalty statute is unconstitutional on its face and as applied to him. England failed to appeal the postconviction court's denial of these three claims to this Court.

("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." (quoting <u>Griffin v. State</u>, 866 So. 2d 1, 22 (Fla. 2003))).

## IV. CONCLUSION

For the foregoing reasons, we affirm the denial of England's postconviction motion and deny his habeas petition.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Volusia County,
    James R. Clayton, Judge - Case No. 2003-35769 CFAES

Richard E. Kiley and Ali Andrew Shakoor, Assistant Capital Collateral Regional Counsels, Middle Region, Tampa, Florida,

    for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Mitchell D. Bishop, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee/Respondent