# Supreme Court of Florida

_____

No. SC18-1192
_____

**DAVID KELSEY SPARRE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC19-389
_____

**DAVID KELSEY SPARRE,**
Petitioner,

vs.

**MARK S. INCH, etc.,**
Respondent.

December 19, 2019

PER CURIAM.

David Kelsey Sparre appeals the denial of his motion to vacate his

conviction of first-degree murder and sentence of death filed under Florida Rule of

Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We

have jurisdiction.  *See* art. V, § 3(b)(1), (9), Fla. Const.  For the reasons below, we affirm the denial of Sparre's postconviction motion and deny his habeas petition.

## I. BACKGROUND

The facts of Sparre's case were fully set out in this Court's decision on direct appeal.  *See Sparre v. State*, 164 So. 3d 1183, 1186-88 (Fla. 2015).  In summary, after meeting Tiara Pool on Craigslist, Sparre stabbed her to death in her Jacksonville apartment and stole several items of her property, including her car. *Id.* at 1186-87.  At trial, the State argued that Sparre committed first-degree murder under both premeditated and felony murder theories, with burglary as the underlying felony.  Sparre conceded that he killed the victim but argued that he had "no prior plan to murder" her and thus had not committed premeditated murder, *id.* at 1189, and he further argued that he had not committed the underlying burglary.

In addition to Sparre's concession to killing the victim, both through his trial counsel and through the admission of Sparre's video-recorded interview with law enforcement during which Sparre admitted to killing the victim with her kitchen knife, *id.* at 1188, the evidence presented to Sparre's guilt-phase jury included testimony from Sparre's former girlfriend that "prior to his arrest Sparre had confessed to her that he had killed a black woman in the victim's Jacksonville apartment," *id.* at 1189; testimony from the medical examiner that the victim "was alive and conscious through at least 88 sharp-force injuries, which included thirty-

nine defensive wounds," *id.* at 1187; testimony from law enforcement "that the crime scene was 'cleaned' to such an extent that virtually no evidence of [the victim's] assailant was recoverable," *id.*; testimony from a DNA expert that although "he was able to rule out ninety-nine percent of the world's population . . . Sparre and [the victim] were possible contributors to the mixture of DNA material found on the murder weapon," *id.*; and testimony that several items of the victim's property were missing, *id.* After hearing the evidence presented at trial, Sparre's jury found him guilty of first-degree murder, finding both that the killing was premeditated and that it was done during the commission of a felony, namely burglary. *Id.* at 1189.[1]

During the penalty phase, Sparre waived the presentation of substantial mitigation evidence proffered by his defense counsel, and Sparre's jury unanimously recommended a death sentence. *Id.* at 1189-91. After holding a *Spencer v. State*, 615 So. 2d 688 (Fla. 1993), hearing, at which Sparre again waived the presentation of substantial mitigation proffered by defense counsel, the trial court followed the jury's recommendation and sentenced Sparre to death. 164

---

1. In finding Sparre guilty of first-degree murder, Sparre's jury further found that Sparre carried, displayed, used, threatened to use, or attempted to use a weapon. *Sparre*, 164 So. 3d at 1189.

So. 3d at 1191-93.[2]  We affirmed Sparre's conviction and sentence on direct

appeal.  *Id.* at 1202.[3]

Thereafter, Sparre filed the motion for postconviction relief at issue in this

appeal.  Following an evidentiary hearing on some of the claims, the circuit court

entered an order denying relief as to all claims.  Sparre appeals the circuit court's

2.  "The trial court found two aggravating circumstances to which both were assigned great weight: (1) HAC; and (2) the murder was committed during the course of a burglary."  *Sparre*, 164 So. 3d at 1192.  The trial court found and assigned moderate weight to the statutory mitigating circumstance that "Sparre was nineteen years old at the time of the murder" and also found and assigned weight to thirteen nonstatutory mitigating circumstances as follows: "(1) Sparre accepts responsibility for his actions (little weight); (2) Sparre has been neglected (some weight); (3) Sparre suffers from emotional deprivation and was emotionally abused (some weight); (4) Sparre was physically abused by his step-father and mother (some weight); (5) Sparre lacks a good support system (some weight); (6) Sparre's father was absent from his life (some weight); (7) Sparre is good at fixing things (slight weight); (8) Sparre dropped out of high school but obtained a GED (little weight); (9) Sparre participated in ROTC in high school and was in the U.S. military (slight weight); (10) Sparre is devoted to his grandmother (little weight); (11) Sparre has a child (some weight); (12) Sparre loves his family (some weight); and (13) Sparre's family loves him (some weight)."  *Id.* at 1192-93 & n.9.

3.  Sparre raised the following claims on direct appeal: (1) "the trial court erred by not calling its own witnesses who potentially had knowledge of mitigating factors against the imposition of the death penalty"; (2) this Court should recede from *Hamblen v. State*, 527 So. 2d 800 (Fla. 1988), which "subjects a trial court's judgment about whether to call its own mitigation witnesses or appoint special mitigation counsel to an abuse of discretion standard on review," *Sparre*, 164 So. 3d at 1199; and (3) Sparre's sentence of death violates *Ring v. Arizona*, 536 U.S. 584 (2002).  164 So. 3d at 1185-86, 1199.  This Court also reviewed the sufficiency of the evidence supporting Sparre's conviction for first-degree murder under both premeditated and felony murder theories and the proportionality of his death sentence.  *Id.* at 1200-02.

denial of his postconviction motion and also petitions this Court for a writ of

habeas corpus.

## II. POSTCONVICTION APPEAL

### A. Ineffective Assistance of Trial Counsel

Sparre first argues that trial counsel was ineffective (1) for failing to request

a continuance to investigate Sparre's competency to waive the presentation of

mitigation to his penalty-phase jury; (2) for failing to file the defense sentencing

memorandum with the clerk of court; (3) for failing to impeach the trial testimony

of the medical examiner with his deposition testimony; (4) for failing to consult

with and retain a forensic pathologist; (5) for extensively attacking the victim

during closing argument and for failing to explain how the evidence supported

Sparre's defense that he "snapped" and committed the killing in a frenzy, rather

than with premeditation; and (6) for failing to object to improper statements by the

prosecutor during the guilt- and penalty-phase closing arguments. Sparre further

argues that the cumulative effect of trial counsel's errors entitles him to relief.

To prove a claim of ineffective assistance of counsel, a defendant must

establish two prongs, deficient performance and prejudice, both of which are

mixed questions of law and fact:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must

show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Bolin v. State*, 41 So. 3d 151, 155 (Fla. 2010).

Regarding deficiency, there is a strong presumption that trial counsel's performance was not ineffective but rather was sound trial strategy, and the defendant bears the burden to overcome it. *Strickland*, 466 U.S. at 690. A court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Darling v. State*, 966 So. 2d 366, 382 (Fla. 2007) (quoting *Howell v. State*, 877 So. 2d 697, 703 (Fla. 2004)).

Regarding the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The postconviction court's factual findings are reviewed for competent, substantial evidence, while its legal conclusions are reviewed de novo. *Bolin*, 41 So. 3d at 155. Further, "because the *Strickland* standard requires establishment of

- 6 -

both prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." *Waterhouse v. State*, 792 So. 2d 1176, 1182 (Fla. 2001). Where trial counsel is deficient in more than one area, however, we must "consider the impact of these errors cumulatively to determine whether [the defendant] has established prejudice." *Parker v. State*, 89 So. 3d 844, 867 (Fla. 2011).

### (1) Continuance

Sparre first argues that trial counsel was ineffective for failing to request a continuance to investigate Sparre's competency to waive the presentation of mitigation to his penalty-phase jury after Sparre disclosed that he had stopped taking his prescribed antipsychotic medication. We affirm the denial of this claim.

Although due process requires that a criminal defendant be competent to proceed at every material stage of a criminal proceeding, *see generally Caraballo v. State*, 39 So. 3d 1234, 1252 (Fla. 2010), "not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges," *Card v. Singletary*, 981 F.2d 481, 487 (11th Cir. 1992) (quoting *United States ex rel. Foster v. De Robertis*, 741 F. 2d 1007, 1012 (7th Cir. 1984)). In Sparre's case, competent, substantial evidence supports the circuit court's finding that trial counsel was not deficient.

This evidence includes the trial court's finding, during the penalty-phase waiver colloquy at which Sparre disclosed his medication stoppage, that Sparre was "lucid" and "answered appropriately" when questioned about his desire to waive mitigation. It also includes statements by trial counsel immediately prior to the colloquy that counsel had "no reason to believe that there's any incompetency issue" and that Sparre had "responded properly to questions" posed by his defense team and "articulated certain ideas for argument," but had elected to waive mitigation against the advice of counsel.[4]

Trial counsel's testimony from the postconviction evidentiary hearing also supports the circuit court's finding that trial counsel was not deficient. This includes testimony that the defense team had no concerns about Sparre's competency or any questions as to whether Sparre was validly waiving the presentation of mitigation. To the contrary, trial counsel testified that Sparre "was adamant" about not wanting mitigation presented on his behalf from the early stages of the case, when he was taking his medication, meaning that Sparre's desire to waive "wasn't last-minute," and that "it seemed as if [Sparre] was making a

---

4. Similarly, in finding that Sparre had validly waived mitigation during the *Spencer* hearing, the record shows that the trial court found that Sparre looked alert and that nothing appeared to be impacting his ability to understand or to make a decision.

conscious decision that he wanted . . . the jury recommendation to come back death."

Moreover, the "doubts" as to Sparre's competency raised by Sparre's postconviction expert, Dr. Harry Krop, were based on Sparre's diagnosed psychosis and Sparre's self-reporting that he had stopped taking the medication prescribed to treat it. However, Dr. Krop acknowledged that, based on Sparre's jail records and spotty medication-compliance history, it would be difficult to state definitively whether Sparre was medicated on the day he waived mitigation. Dr. Krop also testified that he was concerned—based on Sparre's prior self-reporting of hearing the voice of someone named "Tommy"—by Sparre's statement during the waiver colloquy that Sparre had discussed the waiver with himself in addition to discussing it with his defense team. However, nothing in the record indicates that Sparre equates himself with "Tommy" (rather, Dr. Krop testified that Sparre refers to "Tommy" as his "friend"), that Sparre was hearing "Tommy's" voice at the time of his waiver, or that "Tommy" had pressured Sparre to waive mitigation. To the contrary, the jail records from the day after the penalty-phase mitigation waiver indicate that Sparre was not experiencing hallucinations.

Accordingly, because competent, substantial evidence supports the circuit court's finding that, under the totality of the circumstances of this case, a reasonable trial counsel would not have had a reasonable ground to believe that

Sparre was incompetent, we affirm the circuit court's denial of relief. *See Brown v. State*, 258 So. 3d 1201, 1206 (Fla. 2018) ("As long as the trial court's findings are supported by competent substantial evidence, 'this Court will not substitute its judgment for that of the trial court on questions of fact, likewise the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.' ") (quoting *Blanco v. State*, 702 So. 2d 1250, 1252 (Fla. 1997))).

**(2) Sentencing Memorandum**

Sparre next argues that trial counsel was ineffective for failing to file the defense sentencing memorandum with the clerk of court to preserve mitigating evidence for Sparre's direct appeal. This claim, which was not included in Sparre's postconviction motion, is not properly before this Court on appeal. *See State v. Morrison*, 236 So. 3d 204, 223 (Fla. 2017) (holding claim not raised in postconviction motion procedurally barred). Moreover, because trial counsel filed the memorandum with the trial judge and because it is appellate counsel's duty to ensure that the record on appeal is complete, *see* Fla. R. App. P. 9.200(e), the crux of this claim is ineffective assistance of appellate counsel, which is "not cognizable in [a] postconviction motion[], and should be raised in a habeas petition." *Griffin v. State*, 866 So. 2d 1, 21 (Fla. 2003). Indeed, Sparre raises this claim in his habeas petition, and we address its merits in that proper context, below.

## (3) Medical Examiner

Next, Sparre argues that trial counsel was ineffective for failing to impeach the trial testimony of the medical examiner, Dr. Jesse Giles, with his deposition testimony. Specifically, Sparre argues that trial counsel should have impeached Dr. Giles's trial testimony that the evidence is inconsistent with a frenzy due to the number and pattern of the wounds with Dr. Giles's deposition testimony that "there's no way to know . . . whether this is all within a very short time of frenzy." We affirm the circuit court's denial because Sparre failed to preserve this claim, which would nevertheless fail on the merits because trial counsel was not deficient.

To preserve an issue for appellate review, a litigant must present the issue to the trial court in a timely, specific manner and obtain a ruling. *See Corona v. State*, 64 So. 3d 1232, 1242 (Fla. 2011) (discussing the requirements of timeliness and specificity); *Rhodes v. State*, 986 So. 2d 501, 513 (Fla. 2008) ("To be preserved, the issue or legal argument must be raised *and* ruled on by the trial court."). This rule is based on fairness, *State v. Jones*, 377 So. 2d 1163, 1164 (Fla. 1979), and it serves the additional purposes of ensuring that the trial court has been apprised of the putative error and allowing for "intelligent review on appeal," *Jackson v. State*, 451 So. 2d 458, 461 (Fla. 1984) (quoting *Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978)).

The record in this case establishes that Sparre did not timely present the specific issue raised on appeal to the trial court. Although Sparre mentioned the deposition and the concept of impeachment in claim 11 of his rule 3.851 motion, and although he moved the deposition into evidence at the postconviction evidentiary hearing, he did not point out the specific deposition testimony at issue until more than two months after the evidentiary hearing, when he filed his written closing arguments. By then, it was too late for the State to respond. The State had already filed its post-hearing memorandum; the parties' written closing arguments were due on the same day; and no answer or reply to written closing arguments is allowed under the rules of criminal procedure. *See* Fla. R. Crim. P. 3.851(f)(5)(E). In light of the preservation rule's timeliness requirement and goal of fairness, we hold that Sparre's challenge to trial counsel's failure to impeach Dr. Giles is not preserved for appeal.

But even if Sparre had preserved this claim, he would not be entitled to relief because trial counsel was not deficient. Both at trial and during his deposition, Dr. Giles acknowledged that there was no way to know how long the attack took, but ultimately concluded that the attack would have taken at least "several minutes," as he said in his deposition, or "some minutes," as he testified at trial. Failing to impeach Dr. Giles with deposition testimony that, in context, was consistent with his trial testimony, did not fall "below an objective standard of reasonableness"

under the "prevailing professional norms," *Strickland*, 466 U.S. at 688. Thus, even if Sparre had preserved this claim, he would not be entitled to relief because he cannot prove deficiency.

### (4) Forensic Pathologist

In his fourth issue on appeal, Sparre argues that trial counsel was ineffective for failing to consult with and retain a forensic pathologist to testify in support of the theory that Sparre killed the victim in a frenzied state and, therefore, did not commit premeditated murder. Because competent, substantial evidence supports the circuit court's finding that trial counsel's decision was the result of reasonable trial strategy, we disagree.

This Court has identified three factors that must be considered when determining "whether trial counsel's decision not to call an expert to rebut the State's expert constitutes deficient performance":

> First among these are the attorney's reasons for performing in an allegedly deficient manner, including consideration of the attorney's tactical decisions. A second factor is whether cross-examination of the State's expert brings out the expert's weaknesses and whether those weaknesses are argued to the jury. The final factor is whether a defendant can show that an expert was available at the time of trial to rebut the State's expert.

*Allen v. State*, 261 So. 3d 1255, 1283 (Fla. 2019) (citations omitted) (quoting *State v. Riechmann*, 777 So. 2d 342, 354 (Fla. 2000)).

- 13 -

Here, competent, substantial evidence as to the relevant factors supports the circuit court's determination that trial counsel made a reasonable strategy decision. More specifically, trial counsel testified that retaining a forensic pathologist would have allowed the State to emphasize the gruesome details of Sparre's attack on the victim. Additionally, trial counsel was able to cross-examine Dr. Giles concerning the subject matter that the defense expert proposed by postconviction counsel, Dr. John Marraccini, would have addressed. Specifically, the defense's theory that Sparre committed the murder in a frenzied state depended on the allegation that all the wounds could have been inflicted within a short period of time, such as two minutes. Although Dr. Giles opined that the attack would have taken at least several minutes, on cross-examination, Dr. Giles conceded that he could give "just an estimate at best." Although the record shows that Dr. Marraccini was available at the time of trial, at the postconviction evidentiary hearing, Dr. Marraccini agreed with the majority of the trial testimony presented by the State's expert, Dr. Giles— specifically, the description of the victim's wounds, the cause of death, the order in which the victim's neck wound was inflicted as compared to her other wounds, the effect of the neck wound, and the fact that the victim lived through most of the injuries. Moreover, although Dr. Marraccini disagreed with Dr. Giles on the duration of the attack—a point significant to Sparre's theory that the killing was not premeditated—neither expert could testify with certainty as to the length of the

attack, and even Dr. Marraccini conceded on cross-examination that the attack could have taken longer than the two-minute period in which he opined on direct examination that all of the victim's wounds could have been inflicted. In sum, the record shows that if trial counsel had consulted and retained Dr. Marraccini to testify at trial, the State would have been able to emphasize the gruesome nature of the murder, and Dr. Marraccini would not have been able to fully rebut the testimony of Dr. Giles, thus still leaving the jury without definitive expert testimony that the killing was frenzied. Accordingly, we affirm the circuit court's finding that trial counsel made a reasonable strategy decision and was, therefore, not deficient for failing to consult with or retain a forensic pathologist. *See Allen*, 261 So. 3d at 1284.

### (5) Defense Guilt-Phase Closing Argument

Sparre next argues that trial counsel was ineffective for extensively attacking the victim during closing argument and for failing to explain how the evidence supported Sparre's defense that he "snapped" and committed the killing in a frenzy, rather than with premeditation. We agree that trial counsel's closing argument was deficient but affirm the circuit court's denial of relief because Sparre has not established prejudice.

As conveyed during trial counsel's opening statement, Sparre argued that the killing was not premeditated because, just before stabbing the victim, he learned

certain information about her that contradicted the victim's prior representations to Sparre. Specifically, Sparre's counsel claimed that, at that moment, Sparre learned that the victim was married, that her husband was a sailor in the United States Navy and out at sea, and that her children were staying with their grandmother. Trial counsel alleged that these revelations triggered memories and feelings of turmoil, pain, and neglect from Sparre's own life experiences and caused Sparre to snap and kill the victim.

During Sparre's closing argument, however, trial counsel's main approach was to comment negatively on the victim's lifestyle, history, and representations of herself online, without explaining how these comments related to the evidence presented at trial that, arguably, supported the defense theory of a frenzied killing. Primarily, this evidence included Sparre's statements to law enforcement from which trial counsel could have drawn parallels between Sparre's life, including the neglect Sparre experienced as a child and his perception that his mother chose a man over him before ultimately abandoning him to a boy's home, and what he might have envisioned to be the life of the victim's children based on the information he had about her. Instead of tying this evidence into the theme announced in the opening statement, trial counsel devoted nearly half of his closing argument to simply attacking the victim, including referencing her associations with other men, her Craigslist postings, and her concerns about possibly having a

mental illness.  Because trial counsel failed to tie any of his statements about the victim into the defense theory that the killing was frenzied and, in the process, left unargued evidence that could have potentially supported this defense, we hold that trial counsel delivered a deficient closing argument.  *Cf. Jackson v. State*, 147 So. 3d 469, 487 (Fla. 2014) (rejecting claim that trial counsel's closing argument was deficient where trial counsel's "logical" and "coherent" argument stressed the victim's risky lifestyle in the context of arguing that numerous people other than the defendant could have caused the victim's death).

However, because there is no reasonable probability that trial counsel's deficient performance affected the jury's verdict finding Sparre guilty of first-degree murder, there is no prejudice.  As an initial matter, Sparre's defense that the killing was frenzied is not a defense to first-degree *felony* murder, of which Sparre's jury also found him guilty.  *See Sparre*, 164 So. 3d at 1201 ("Sparre exhibited his intent to commit burglary when he remained in Pool's residence and committed a forcible felony against her (murder).").

Moreover, there is no reasonable probability that trial counsel's deficient closing argument affected the jury's verdict as to first-degree premeditated murder either.  Although the jury heard Sparre's statements to law enforcement, including that he was physically abused and neglected as a child and through his adolescence, and that he experienced a blackout when he murdered the victim,

- 17 -

Sparre did not tell law enforcement that he snapped in reaction to something the victim said. Moreover, Sparre's defense that the killing was frenzied fails to account for how he came into possession of the knife, which belonged to the victim's kitchen knife set. Irrespective of any intent that could have been formed in the length of time required to inflict at least 88 "sharp-force injuries," the record shows that Sparre had to have either acquired the murder weapon before the victim said something that caused him to snap or walked out of the bedroom to the kitchen to retrieve it after she said what she allegedly said. Either scenario indicates premeditation and contradicts Sparre's theory.

Accordingly, even if trial counsel had made a more coherent closing argument connecting information about the victim to the defense theory that Sparre killed her in a frenzy, there is no reasonable probability that the jury would have acquitted Sparre of first-degree murder—under either the premeditated or felony-murder theory—and convicted him of second-degree murder instead. Therefore, because Sparre has failed to establish prejudice, we affirm the circuit court's denial of this claim. *See Strickland*, 466 U.S. at 694.

### (6) Prosecutor's Statements

Sparre next argues that trial counsel was ineffective for failing to object to several allegedly improper comments by the prosecutor during the State's guilt-

and penalty-phase closing arguments.[5] With respect to all but two of the comments, we affirm the circuit court's denial of relief without discussion, other than to note that each of these subclaims was properly denied for one or both of the following reasons: (1) the comment at issue was not improper as a matter of law and counsel cannot be deficient for failing to raise a meritless argument, *see Valentine v. State*, 98 So. 3d 44, 55 (Fla. 2012), or (2) the trial court correctly ruled that Sparre failed to meet his burden to present evidence in support of the claim, *see Ferrell v. State*, 918 So. 2d 163, 173-74 (Fla. 2005), where postconviction counsel did not specifically question trial counsel about the comment at issue and trial counsel testified generally that they would have objected if they had found the comments improper and that sometimes objecting to an improper comment is more prejudicial to the defendant than helpful.

We disagree, however, with the circuit court's ruling that trial counsel was not deficient for failing to object to the prosecutor's (1) guilt-phase closing arguments that crossed the line into misrepresenting and mocking Sparre's defense

_____

5. Sparre argues that the prosecutor made the following improper arguments to which trial counsel was ineffective for failing to object: (1) alleged misstatements of the law pertaining to first- and second-degree murder; (2) alleged inflammatory statements; (3) alleged improper vouching for the victim's credibility; (4) alleged statements arguing facts not in evidence; (5) statements allegedly denigrating the defense theory that the killing was not premeditated; (6) statements improperly arguing aggravation during the guilt phase; and (7) statements improperly invoking the State's authority in arguing that the jury should recommend a death sentence because the State was seeking the death penalty.

that the killing was frenzied rather than premeditated; and (2) penalty-phase

closing arguments that crossed the line into denigrating Sparre's proposed

mitigating circumstance that he was under the influence of extreme mental or

emotional disturbance, as evidenced by the number of wounds that Sparre inflicted

on the victim, which Sparre argued demonstrated the frenzied nature of the killing.

*See Jackson v. State*, 147 So. 3d 469, 486 (Fla. 2014) ("[A] prosecutor may not

ridicule a defendant or his theory of defense." (quoting *Servis v. State*, 855 So. 2d

1190, 1194 (Fla. 5th DCA 2003))); *see also Delhall v. State*, 95 So. 3d 134, 167-68

(Fla. 2012) ("This Court has long recognized that a prosecutor cannot improperly

denigrate mitigation during a closing argument." (quoting *Williamson v. State*, 994

So. 2d 1000, 1014 (Fla. 2008))).

Specifically, during the guilt-phase closing argument, the prosecutor crossed

the line into misrepresenting and then mocking Sparre's defense by, for example,

suggesting that Sparre's rebuttal to the premeditation element of first-degree

murder was a claim that he was "kind of just having fun with her" and was just

committing a "thrill kill and then he just kind of got a little carried away" and "the

knife just kept slipping." These claims, of course, were not the defense Sparre

asserted. Similarly, during the penalty-phase closing argument, the prosecutor

crossed the line into denigrating Sparre's proposed mitigating circumstance that he

was under the influence of extreme mental or emotional disturbance as

- 20 -

demonstrated by the frenzied nature of the killing by, for example, arguing that in proposing this mitigating circumstance, Sparre was apparently asking the jury to accept that he had "decided just to kill [the victim] for the heck of it, for his enjoyment" because "he was very emotional, disturbed, distraught because his grandmother was having surgery at the hospital," when in fact Sparre did not argue that he killed the victim for enjoyment, that doing so would somehow establish the mitigator in question, or that the alleged frenzy was triggered by an emotional response to his grandmother's health situation.

Nevertheless, we affirm the circuit court's denial of relief because Sparre cannot establish prejudice as a result of trial counsel's deficiency in failing to object to these improper arguments. There is no reasonable probability that Sparre's trial counsel's failure to object during the guilt phase affected the jury's verdict of first-degree murder because, as explained above with regard to the deficiency in defense counsel's closing argument, Sparre's frenzy theory did not confront the State's felony-murder theory, which the jury accepted, and did not account for the substantial evidence of premeditation. Likewise, there is no reasonable probability that the deficiency affected the jury's sentencing recommendation or the trial court's rejection of Sparre's proposed mitigating circumstance that Sparre was under the influence of extreme mental or emotional

disturbance. Accordingly, because Sparre cannot establish prejudice, we affirm the circuit court's denial of relief. *See Strickland*, 466 U.S. at 694.

## (7) Cumulative Error

Sparre next argues that the cumulative effect of trial counsel's errors entitles him to relief. Because we found trial counsel deficient in two respects—for failing to deliver a coherent guilt-phase closing argument as to Sparre's defense that the killing was frenzied and for failing to object to closing arguments by the prosecutor that crossed the line into denigrating this defense and the proposed mitigator of extreme mental or emotional disturbance as demonstrated by the frenzied nature of the killing—we must analyze whether these two deficiencies, taken together, are sufficient to establish the requisite prejudice. *See Parker*, 89 So. 3d at 867. They are not. There is no reasonable probability that, taken together, these deficiencies affected the first-degree murder verdict or the sentence of death on the record before us. Accordingly, we affirm the denial of Sparre's cumulative error claim.

## B. Other Claims

Sparre also argues that the postconviction court erred in three other respects, namely (1) in denying Sparre's claim that the categorical Eighth Amendment bar against executing juvenile offenders established by *Roper v. Simmons*, 543 U.S. 551 (2005), should be extended to Sparre, who was 19 years old at the time of the

murder; (2) in denying Sparre relief from his death sentence pursuant to *Hurst*[6]; and (3) in denying Sparre's motion to amend his postconviction motion to add a claim that trial counsel was ineffective for failing to file the defense sentencing memorandum.

As to the first two claims, our precedent plainly forecloses relief on the merits of Sparre's *Roper* claim—even assuming it is not procedurally barred because Sparre failed to raise it on direct appeal. *See Branch v. State*, 236 So. 3d 981, 987 (Fla. 2018). Likewise, our precedent forecloses Sparre's *Hurst* claim. *See Philmore v. State*, 234 So. 3d 567, 568 (Fla. 2018) (citing *Davis v. State*, 207 So. 3d 142, 173-75 (Fla. 2016)).

As to the third claim, we find no abuse of discretion in the circuit court's order denying Sparre's motion to amend. *See Marek v. State*, 8 So. 3d 1123, 1131 (Fla. 2009) (reviewing denial of motion to amend rule 3.851 motion for abuse of discretion). The crux of the claim that Sparre sought to add to his rule 3.851 motion was ineffective assistance of counsel based on the failure to perfect the record on appeal with the defense sentencing memorandum. However, as explained above, it was appellate counsel's duty to ensure that the memorandum— which trial counsel filed with the trial court—was included in the record on appeal.

---

6. *Hurst v. Florida*, 136 S. Ct. 616 (2016); *Hurst v. State (Hurst)*, 202 So. 3d 40 (Fla. 2016).

*See* Fla. R. App. P. 9.200(e). Therefore, appellate counsel's deficiency in failing to do so was properly raised in Sparre's habeas petition as a claim of ineffective assistance of appellate counsel, not in a rule 3.851 motion under the guise of a claim of ineffective assistance of trial counsel. Accordingly, the circuit court did not abuse its discretion in denying Sparre's motion to amend his postconviction motion to include this claim.

### III. HABEAS PETITION

In his habeas petition, Sparre argues that appellate counsel was ineffective in three respects, namely (1) for failing to supplement the record on appeal with the defense sentencing memorandum; (2) for failing to argue fundamental error based on prosecutorial misconduct; and (3) for failing to challenge the admission of certain autopsy photographs.

This Court has explained the standard for reviewing claims of ineffective assistance of appellate counsel, which are properly presented in a petition for a writ of habeas corpus, as follows:

> "The standard of review for ineffective appellate counsel claims mirrors the *Strickland* standard for ineffective assistance of trial counsel." [*Wickham v. State*, 124 So. 3d 841, 863 (Fla. 2013).] Specifically, to be entitled to habeas relief on the basis of ineffective assistance of appellate counsel, the defendant must establish
>
> > [first, that] the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, [that] the deficiency

> in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

*Bradley v. State*, 33 So. 3d 664, 684 (Fla. 2010) (quoting *Pope v. Wainwright*, 496 So. 2d 798, 800 (Fla. 1986)). Further, "appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims." *Valle v. Moore*, 837 So. 2d 905, 908 (Fla. 2002).

*England v. State*, 151 So. 3d 1132, 1140 (Fla. 2014).

### (1) Sentencing Memorandum

As to Sparre's first habeas claim, we agree that appellate counsel was deficient for failing to supplement the record on appeal with the defense sentencing memorandum, which trial counsel filed with the trial court but which (apparently) was not filed with the clerk of court and therefore not included in the record on appeal. Appellate counsel was deficient for failing to ensure that the record on appeal was complete. *See* Fla. R. App. P. 9.200(e) ("The burden to ensure that the record is prepared and transmitted in accordance with these rules shall be on the petitioner or the appellant."). However, we cannot agree that the deficiency "compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." *England*, 151 So. 3d at 1140 (quoting *Bradley*, 33 So. 3d at 684). Rather, the record contains a proffer by defense counsel that is similar in all material respects to the mitigating evidence addressed in the defense sentencing memorandum. Thus, this Court's review of Sparre's death sentence on

- 25 -

direct appeal was not affected in any way, let alone compromised to such a degree as to undermine our confidence in the correctness of the result. Accordingly, we deny relief as to this claim.

## (2) Prosecutorial Misconduct

Sparre next argues that appellate counsel was ineffective for failing to raise several claims of fundamental error predicated on alleged prosecutorial misconduct in the State's guilt-phase closing arguments and as a result of the State's failure to correct certain alleged deficiencies in the presentence investigation (PSI) report regarding available mitigation. We disagree.

Regarding the State's guilt-phase closing arguments, in light of our holding that Sparre was not prejudiced by trial counsel's failure to object to the arguments we found improperly denigrated Sparre's defense theory (and proposed mitigation based on that theory), it necessarily follows that had appellate counsel raised this unpreserved error on direct appeal, counsel would not have been able to make the more exacting showing required to establish the error was fundamental. *See State v. Spencer*, 216 So. 3d 481, 492 (Fla. 2017). Accordingly, because "appellate counsel cannot be deemed ineffective for failing to raise . . . issues that were not properly raised in the trial court and are not fundamental error," *Serrano v. State*, 225 So. 3d 737, 757 (Fla. 2017), Sparre is not entitled to relief.

Nor is Sparre entitled to relief on his claim concerning the PSI report. On direct appeal, this Court held that the PSI report complied with the requirement of *Muhammad v. State*, 782 So. 2d 343, 363-64 (Fla. 2001), to be a comprehensive document. *Sparre*, 164 So. 3d at 1195. In so doing, we observed that "neither party raised any objection on the record or otherwise informed the trial court that the PSI report filed is inadequate." *Id*. Sparre now contends that appellate counsel should have argued on direct appeal that the prosecutor committed misconduct amounting to fundamental error by failing to alert the trial court to unpresented mitigation evidence during the *Spencer* hearing and further arguing that Sparre offered no expert testimony to establish mental health mitigation despite knowing such evidence existed. However, Sparre does not allege that the State possessed any mitigation other than that contained in the detailed proffers that the defense team presented to the trial court when Sparre waived the presentation of mitigation during the penalty phase and at the *Spencer* hearing. Thus, this claim appears to be an improper attempt to relitigate the merits of an issue—the PSI report's compliance with *Muhammad*—raised and decided against Sparre on direct appeal. *See Deparvine v. State*, 146 So. 3d 1071, 1108 (Fla. 2014) ("[H]abeas corpus 'is not a second appeal and cannot be used to litigate or relitigate issues which could have been . . . or were raised on direct appeal.' " (quoting *Breedlove v. Singletary*, 595 So. 2d 8, 10 (Fla. 1992))). But even if it is not, because all the relevant

mitigation was before the trial court, if appellate counsel had raised this argument on direct appeal, counsel would not have been able to establish that the alleged error was fundamental. Accordingly, Sparre is not entitled to habeas relief. *See Serrano*, 225 So. 3d at 757.

### (3) Autopsy Photographs

In the last claim of his habeas petition, Sparre argues that appellate counsel was ineffective for failing to argue on direct appeal that the trial court abused its discretion in admitting 28 of the 35 autopsy photographs admitted during the guilt phase. We disagree.

The general standard governing the admission of evidence over an objection that the evidence is overly prejudicial or cumulative is that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2011). We have explained that the admission, over an objection based on this rule, of "photographic evidence of a murder victim is within the discretion of the trial court, and its ruling will not be disturbed on appeal absent a clear showing of abuse of that discretion." *Rodriguez v. State*, 919 So. 2d 1252, 1286 (Fla. 2005). Autopsy photographs can be relevant to "explain a medical examiner's testimony [and] to show the manner of death [and] the location of wounds," *Floyd v. State*, 808 So. 2d 175, 184 (Fla. 2002)

(quoting *Larkins v. State*, 655 So. 2d 95, 98 (Fla. 1995)), or more generally, "to show the circumstances of the crime and the nature and extent of the victim's injuries," *id.* We have recognized that a trial court should limit the number of gruesome photographs shown to the jury, *id.*, so that unnecessarily repetitive photos are not admitted, *see Straight v. State*, 397 So. 2d 903, 907 (Fla. 1981) (discussing *Young v. State*, 234 So. 2d 341 (Fla. 1970), where this Court found prejudicial error in the admission of 45 autopsy photographs, including 25 depicting the victim's partially decomposed body), while also recognizing that each case is different and the number of photographs admitted is not dispositive. *See Orme v. State*, 896 So. 2d 725, 740 (Fla. 2005) (finding no abuse of discretion in the admission of allegedly gruesome photographs even though there were 43 of them).

Here, the trial court admitted 35 photographs. However, because Sparre inflicted approximately 88 wounds on the victim, her injuries could not be fully understood through only a few photographs. Although some of the injuries appear in multiple photographs from different angles, the record shows that the trial court attempted to avoid unnecessary duplication of gruesome images. In some cases, injuries were shown more than once from different angles to provide a fuller understanding of the extent and nature of the injuries. In other cases, injuries were shown more than once because they appear in the periphery of a photograph

intended to depict another injury. Also, the trial court admitted some pictures showing broader views so that the patterns of the injuries could be understood, while admitting closer up views of some of the same injuries so that the extent of those injuries could be understood. The photographs provided a much clearer understanding of the victim's injuries than what could have been accomplished through the medical examiner's testimony alone, and for this reason, were probative of the determination of whether this murder was premeditated. It was within the trial court's discretion to admit each of the photographs, as their probative value was not substantially outweighed by the danger of unfair prejudice. *See* § 90.403, Fla. Stat.; *see also Rodriguez*, 919 So. 2d at 1286.

Moreover, following a thorough review of the 35 photographs, there are only three that even arguably should have been excluded as cumulative—an extra picture of each of the victim's palms and a close-up of the right side of the victim's face that is potentially duplicative of another close-up of the same side of the victim's face, although even this picture was taken from a slightly different angle. Nevertheless, because there is no reasonable possibility that the admission of these photographs contributed to the conviction in any way that the remaining photographs would not have, any error in their admission was harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (explaining that error is harmless if "there is no reasonable possibility that [it]

- 30 -

contributed to the conviction"). Because, to the extent any error occurred, it was harmless and therefore would not have entitled Sparre to relief, appellate counsel was not ineffective for failing to raise this meritless claim on direct appeal. *See Valle*, 837 So. 2d at 908. Accordingly, Sparre is not entitled to habeas relief.

## IV. CONCLUSION

For the foregoing reasons, we affirm the denial of Sparre's postconviction motion and deny his habeas petition.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Elizabeth Anne Senterfitt, Judge - Case No. 162010CF008424AXXXMA
And an Original Proceeding – Habeas Corpus

Robert S. Friedman, Capital Collateral Regional Counsel, Stacy R. Biggart, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, and Janine D. Robinson, Assistant Attorney General, Tallahassee, Florida,

    for Appellee